No. 16-2089

# In the United States Court of Appeals for the Third Circuit

IRENE NOVOSAD and KATHY MORRIS,

*Plaintiffs-Appellees,*

*v.*

BROOMALL OPERATING COMPANY LP and
SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## JOINT APPENDIX: VOLUME II OF II
### (pp. 6a–148a)

Ari R. Karpf
Timothy S. Seiler
KARPF, KARPF, & CERUTTI, P.C.
3331 Street Road
Two Greenwood Center, Suite 128
Bensalem, PA 19020
(215) 639-0801

*Counsel for Plaintiffs-Appellees
Irene Novosad and Kathy Morris*

James F. Segroves
Kelly A. Carroll
HOOPER, LUNDY & BOOKMAN, PC
401 9th Street, NW, Suite 550
Washington, DC 20004
(202) 580-7700

Henry M. Perlowski
Chesley S. McLeod
ARNALL GOLDEN GREGORY LLP
171 17th Street, NW, Suite 2100
Atlanta, GA 30363
(404) 873-8500

*Counsel for Defendants-Appellants Broomall
Operating Company LP and SavaSeniorCare
Administrative Services, LLC*

# TABLE OF CONTENTS*

Page

District Court Docket Entries………………..………...……………………………6a

Collective / Class Action Complaint (Nov. 20, 2015), E.D. Pa. ECF No. 1…......…..12a

Answer and Defenses of Defendants Broomall Operating Company LP
and SavaSeniorCare, LLC (Feb. 10, 2016), E.D. Pa. ECF No. 17 ….…...…………..22a

Defendants' Motion to Compel Individual Arbitration and
Stay Proceedings (Feb. 10, 2016), E.D. Pa. ECF No. 18….…....….…….....………..40a

    Sworn Declaration of Katherine M. Tate (Feb. 5, 2016),
    Exhibit 1 to Defendants' Motion to Compel Individual Arbitration
    and Stay Proceedings, E.D. Pa. ECF No. 18-2………………….…..…….………43a

        Employee Dispute Resolution Book (Irene Novosad), Exhibit A
        to Sworn Declaration of Katherine M. Tate (Feb. 5, 2016),
        E.D. Pa. ECF No. 18-2…………..…………………………….…...……..47a

        Employment Dispute Resolution Program Acknowledgment
        (Irene Novosad), Exhibit B to Sworn Declaration of Katherine
        M. Tate (Feb. 5, 2016), E.D. Pa. ECF No. 18-2 …………..………....……..57a

        Acknowledgment and Certification of Accuracy (Irene Novosad),
        Exhibit C to Sworn Declaration of Katherine M. Tate (Feb. 5, 2016),
        E.D. Pa. ECF No. 18-2 …………………………………………….……59a

First Amended Collective / Class Action Complaint (Mar. 2, 2016),
E.D. Pa. ECF No. 28………………………………...…………….………………61a

---

\* In accordance with L.A.R. 32.2(c), the Joint Appendix: Volume I of II (pp. 1a–5a) is bound with the Brief of Appellants and contains the following: (1) Notice of Appeal (Apr. 25, 2016), E.D. Pa. ECF No. 41, J.A. 1a–3a; and (2) Order of Apr. 11, 2016, E.D. Pa. ECF No. 40, J.A. 4a–5a.

Sworn Declaration of Katherine M. Tate (Mar. 16, 2016),
E.D. Pa. ECF No. 38……………………………………………………………...69a

    Employee Dispute Resolution Book (Kathy Morris), Exhibit A
    to Sworn Declaration of Katherine M. Tate (Mar. 16, 2016),
    E.D. Pa. ECF No. 38-1 …………..…………………………...……..……..72a

    Employment Dispute Resolution Program Acknowledgment
    (Kathy Morris), Exhibit B to Sworn Declaration of Katherine
    M. Tate (Mar. 16, 2016), E.D. Pa. ECF No. 38-1…………..……………..82a

    Acknowledgment and Certification of Accuracy (Kathy Morris),
    Exhibit C to Sworn Declaration of Katherine M. Tate (Mar. 16, 2016),
    E.D. Pa. ECF No. 38-1 …………………………………….………………84a

    Employment Dispute Resolution Program Agreement (Kathy Morris),
    Exhibit D to Sworn Declaration of Katherine M. Tate (Mar. 16, 2016),
    E.D. Pa. ECF No. 38-1 …………………………………….………………86a

Defendants' Answer and Defenses to Plaintiffs' First Amended (Putative)
Collective/Class Action Complaint (Mar. 21, 2016), E.D. Pa. ECF No. 39 ……..…88a

Transcript of Motion Hearing (Mar. 17, 2016), E.D. Pa. ECF No. 45 ………..…..105a

# # #

APPEAL,STANDARD

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:15–cv–06252–JS

| | |
|---|---|
| NOVOSAD v. THI OF PENNSYLVANIA AT BROOMALL, LLC et al | Date Filed: 11/20/2015 |
| Assigned to: HONORABLE JUAN R. SANCHEZ | Jury Demand: Both |
| Case in other court:  USCA, 16–02089 | Nature of Suit: 710 Labor: Fair Standards |
| Cause: 29:201 Fair Labor Standards Act | Jurisdiction: Federal Question |

**Plaintiff**

IRENE NOVOSAD                            represented by   **TIMOTHY S. SEILER**
KARPF KARPF & CERUTTI
3331 STREET ROAD SUITE 128
BENSALEM, PA 19020
215–639–0801
Email: tseiler@karpf–law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ARI RISSON KARPF**
KARPF, KARPF & CERUTTI, P.C.
3331 STREET ROAD
TWO GREENWOOD SQUARE, SUITE 128
BENSALEM, PA 19020
215–639–0801
Fax: 215–639–4970
Email: akarpf@karpf–law.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

KATHY MORRIS                            represented by   **ARI RISSON KARPF**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**THI OF PENNSYLVANIA AT BROOMALL, LLC**            represented by   **MARTHA J. KEON**
*TERMINATED: 03/07/2016*
*doing business as*
BROOMALL REHABILITATION
AND NURSING CENTER

LITTLER MENDELSON, P.C.
1601 CHERRY STREET
THREE PARKWAY, SUITE 1400
PHILADELPHIA, PA 19102
267–402–3000
Email: mkeon@littler.com
*TERMINATED: 03/07/2016*
*LEAD ATTORNEY*

**RACHEL FENDELL SATINSKY**
LITTLER MENDELSON, P.C.
1601 Cherry Street
Suite 1400
PHILADELPHIA, PA 19102
267–402–3071
Fax: 267–402–3131
Email: rsatinsky@littler.com
*TERMINATED: 03/07/2016*

**Defendant**

represented by

| | |
|---|---|
| **BROOMALL OPERATING COMPANY, LP** | **HENRY M. PERLOWSKI**<br>ARNALL GOLDEN GREGORY LLP<br>171–17TH ST NW STE 2100<br>ATLANTA, GA 30363<br>404–873–8684<br>Email: henry.perlowski@agg.com<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | **RYAN P. NEWELL**<br>CONNOLLY GALLAGHER LLP<br>THE BRANDYWINE BLDG<br>1000 N WEST ST SUITE 1400<br>WILMINGTON, DE 19801<br>302–888–6434<br>Email: rnewell@connollygallagher.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | **CHESLEY S. MCLEOD**<br>ARNALL GOLDEN GREGORY LLP<br>171 – 17TH ST NW STE 2100<br>ATLANTA, GA 30363<br>404–973–8524<br>Email: chesley.mcleod@agg.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | **JOSIAH RODNEY WOLCOTT**<br>CONNOLLY BOVE LODGE & HUTZ LLP<br>267 EAST MAIN STREET<br>NEWARK, DE 19711<br>302–888–2671<br>Email: JWOLCOTT@CONNOLLYGALLAGHER.COM<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **SAVA SENIOR CARE, LLC**<br>*TERMINATED: 03/02/2016* | represented by | **HENRY M. PERLOWSKI**<br>(See above for address)<br>*TERMINATED: 03/02/2016*<br>*LEAD ATTORNEY*<br>*PRO HAC VICE* |
| | | **RYAN P. NEWELL**<br>(See above for address)<br>*TERMINATED: 03/02/2016*<br>*LEAD ATTORNEY* |
| | | **CHESLEY S. MCLEOD**<br>(See above for address)<br>*TERMINATED: 03/02/2016*<br>*PRO HAC VICE* |
| | | **JOSIAH RODNEY WOLCOTT**<br>(See above for address)<br>*TERMINATED: 03/02/2016* |

**Defendant**

| | | |
|---|---|---|
| **SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC** | represented by | **HENRY M. PERLOWSKI**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**RYAN P. NEWELL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CHESLEY S. MCLEOD**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JOSIAH RODNEY WOLCOTT**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/20/2015 | 1 | COMPLAINT against BROOMALL OPERATING COMPANY, LP, SAVA SENIOR CARE, LLC, THI OF PENNSYLVANIA AT BROOMALL, LLC ( Filing fee $ 400 receipt number 0313–10986954.), filed by IRENE NOVOSAD.(KARPF, ARI) (Entered: 11/20/2015) |
| 11/20/2015 | 2 | REQUEST FOR WAIVER of Service sent to Sava Senior Care, LLC on 11/20/2015 by IRENE NOVOSAD. Waiver of Service due by 12/21/2015. (KARPF, ARI) (Entered: 11/20/2015) |
| 11/20/2015 | 3 | REQUEST FOR WAIVER of Service sent to Broomall Operating Company, LP on 11/20/2015 by IRENE NOVOSAD. Waiver of Service due by 12/21/2015. (KARPF, ARI) (Entered: 11/20/2015) |
| 11/20/2015 | 4 | REQUEST FOR WAIVER of Service sent to THI of Pennsylvania at Broomall, LLC d/b/a Broomall Rehabilitation and Nursing Center on 11/20/2015 by IRENE NOVOSAD. Waiver of Service due by 12/21/2015. (KARPF, ARI) (Entered: 11/20/2015) |
| 11/20/2015 | | DEMAND for Trial by Jury by IRENE NOVOSAD. (rt) (Entered: 11/20/2015) |
| 12/09/2015 | 5 | NOTICE of Appearance by TIMOTHY S. SEILER on behalf of IRENE NOVOSAD (SEILER, TIMOTHY) (Entered: 12/09/2015) |
| 12/29/2015 | 6 | Praecipe *To Issue Alias Summons* by IRENE NOVOSAD. (KARPF, ARI) (Entered: 12/29/2015) |
| 12/29/2015 | | Alias Summons Issued as to THI OF PENNSYLVANIA AT BROOMALL, LLC, BROOMALL OPERATING COMPANY, LP and SAVA SENIOR CARE, LLC. Mailed to Counsel on 12/30/15. (va, ) (Entered: 12/30/2015) |
| 01/07/2016 | 7 | AFFIDAVIT of Service by Frank Evans re: served Summons and Complaint upon Broomall Operating Company LP and Broomall Rehabilitation & Nursing Center by Personal Service on 1/4/2016. (KARPF, ARI) (FILED IN ERROR BY ATTY WITH INCORRECT PDF; ATTY HAS RE–FILED AT PAPER #8) Modified on 1/12/2016 (md). (Entered: 01/07/2016) |
| 01/08/2016 | 8 | Affidavit of Service by IRENE NOVOSAD. Amendment to 7 Affidavit of Service re served Summons and Complaint upon Brandon Jolly (Asst. Administrator) on behalf of BROOMALL OPERATING COMPANY, LP by Personal Service on 1/4/2016, answer due 1/25/2016; and upon Broomall Rehabiliation and Nursing Center on 1/4/2016. (KARPF, ARI) Modified on 1/12/2016 (md). (Entered: 01/08/2016) |
| 01/08/2016 | 9 | WAIVER OF SERVICE Returned Executed by IRENE NOVOSAD. THI OF PENNSYLVANIA AT BROOMALL, LLC waiver sent on 11/20/2015, answer due 1/19/2016. (KARPF, ARI) (Entered: 01/08/2016) |
| 01/13/2016 | 10 | NOTICE of Appearance by MARTHA J. KEON on behalf of THI OF PENNSYLVANIA AT BROOMALL, LLC with Certificate of Service(KEON, MARTHA) (Entered: 01/13/2016) |

| | | |
|---|---|---|
| 01/13/2016 | 11 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by THI OF PENNSYLVANIA AT BROOMALL, LLC.(KEON, MARTHA) (Entered: 01/13/2016) |
| 01/13/2016 | 12 | NOTICE of Appearance by RACHEL FENDELL SATINSKY on behalf of THI OF PENNSYLVANIA AT BROOMALL, LLC with Certificate of Service(SATINSKY, RACHEL) (Entered: 01/13/2016) |
| 01/14/2016 | 13 | STIPULATION AND ORDER THAT DEFENDANT THI OF PENNSYLVANIA AT BROOMALL, LLC MAY ANSWER BY 2/10/2016. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 1/14/16. 1/14/16 ENTERED AND COPIES MAILED TO UNREPS AND E–MAILED. (va, ) Modified on 1/15/2016 (md). (Entered: 01/14/2016) |
| 01/20/2016 | 14 | STIPULATION for Extension of Time for Defendants BROOMALL OPERATING COMPANY, LP and SAVASENIORCARE, LLC to Respond to the Complaint by SAVA SENIOR CARE, LLC. (WOLCOTT, JOSIAH) (FILED IN ERROR BY ATTY; COPY FORWARDED TO JUDGE FOR APPROVAL) Modified on 1/21/2016 (md). (Entered: 01/20/2016) |
| 01/21/2016 | 15 | STIPULATION AND ORDER THAT DEFENDANTS BROOMALL OPERATING COMPANY, LP AND SAVA SENIOR CARE, LLC FILE ANSWER TO COMPLAINT BY 2/10/2016. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 1/21/16. 1/21/16 ENTERED AND COPIES E–MAILED. (va, ) (Entered: 01/21/2016) |
| 02/10/2016 | 16 | MOTION for Pro Hac Vice of RYAN P. NEWELL, ESQ. filed by BROOMALL OPERATING COMPANY, LP, SAVA SENIOR CARE, LLC.Statement, Motion, and Certificate of Service..(WOLCOTT, JOSIAH) (Entered: 02/10/2016) |
| 02/10/2016 | 17 | ANSWER to Complaint by BROOMALL OPERATING COMPANY, LP, SAVA SENIOR CARE, LLC.Jury Demand, Certificate of Service.(WOLCOTT, JOSIAH) Modified on 2/11/2016 (tjd). (Entered: 02/10/2016) |
| 02/10/2016 | 18 | MOTION to Compel *Individual Arbitration and Stay Proceedings* filed by BROOMALL OPERATING COMPANY, LP, SAVA SENIOR CARE, LLC.Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Exhibit 1 – Declaration of Kathrine M. Tate, # 3 Exhibit 2 – Proposed Order)(WOLCOTT, JOSIAH) (Entered: 02/10/2016) |
| 02/10/2016 | 19 | ORDER GRANTING 16 MOTION FOR PRO HAC VICE ADMISSION OF RYAN P. NEWELL, ESQ. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 2/10/16. 2/11/16 ENTERED AND COPIES MAILED (WITH ECF FORMS) AND E–MAILED. (va, ) (Entered: 02/11/2016) |
| 02/12/2016 | 20 | ORDER THAT A RULE 16 CONFERENCE AND ORAL ARGUMENT ON DEFENDANTS BROOMALL OPERATING COMPANY, LP AND SAVA SENIOR CARE, LLCS MOTION TO COMPEL (DOCUMENT 18 ) WILL BE HELD IN THE ABOVE–CAPTIONED MATTER ON MARCH 7, 2016, AT 11:00 A.M. IN COURTROOM 11A. COUNSEL ARE REQUIRED TO COMPLETE RULE 26(A) DISCLOSURES, TO CONFER PURSUANT TO RULE 26(F) AND TO COMPLETE AND SUBMIT TO THE COURT THE JOINT RULE 16 CONFERENCE INFORMATION REPORT INCLUDED IN JUDGE SNCHEZS PROCEDURES AT LEAST 24 HOURS PRIOR TO THE RULE 16 CONFERENCE. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 2/12/16. 2/16/16 ENTERED AND COPIES MAILED, E–MAILED. (va, ) (Entered: 02/16/2016) |
| 02/16/2016 | 21 | MOTION for Pro Hac Vice of *Henry M. Perlowski, Esq.* filed by BROOMALL OPERATING COMPANY, LP, SAVA SENIOR CARE, LLC, Statement, Motion, and Certificate of Service.(WOLCOTT, JOSIAH) Modified on 2/17/2016 (md). ($40.00, PPE135712) (va, ). (Entered: 02/16/2016) |
| 02/16/2016 | 22 | MOTION for Pro Hac Vice of *Chesley S. McLeod, Esq.* filed by BROOMALL OPERATING COMPANY, LP, SAVA SENIOR CARE, LLC, Statement, Motion, and Certificate of Service.(WOLCOTT, JOSIAH) Modified on 2/17/2016 (md). ($40.00, PPE135712) (va, ). (Entered: 02/16/2016) |
| 02/17/2016 | 23 | ORDER GRANTING 21 MOTION FOR PRO HAC VICE ADMISSION OF HENRY M. PERLOWSKI. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 2/17/16. |

9a

| | | 2/18/16 ENTERED AND COPIES MAILED, E−MAILED. (va, ) (Entered: 02/18/2016) |
|---|---|---|
| 02/17/2016 | 24 | ORDER GRANTING 22 MOTION FOR PRO HAC VICE ADMISSION OF CHESLEY S. MCLEOD. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 2/17/16. 2/18/16 ENTERED AND COPIES MAILED, E−MAILED. (va, ) (Entered: 02/18/2016) |
| 02/18/2016 | 25 | ORDER THE MARCH 7, 2016, RULE 16 CONFERENCE AND ORAL ARGUMENT IS RESCHEDULED TO MARCH 8, 2016, AT 9:00 A.M. IN COURTROOM 11A. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 2/18/16. 2/18/16 ENTERED AND COPIES MAILED, E−MAILED. (va, ) (Entered: 02/18/2016) |
| 02/29/2016 | 26 | RESPONSE in Opposition re 18 MOTION to Compel *Individual Arbitration and Stay Proceedings* filed by IRENE NOVOSAD. (Attachments: # 1 Exhibit, # 2 Exhibit)(SEILER, TIMOTHY) (Entered: 02/29/2016) |
| 03/02/2016 | 28 | AMENDED COMPLAINT/ CLASS ACTION COMPLAINT against BROOMALL OPERATING COMPANY, LP, SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC, THI OF PENNSYLVANIA AT BROOMALL, LLC, filed by IRENE NOVOSAD, KATHY MORRIS. Jury Demand. (va, ) (Entered: 03/03/2016) |
| 03/03/2016 | 27 | Statement [Corporate Disclosure Statement] by BROOMALL OPERATING COMPANY, LP, SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC. (NEWELL, RYAN) Modified on 3/4/2016 (md). (Entered: 03/03/2016) |
| 03/03/2016 | 29 | ORDER THAT THE MARCH 8, 2016, RULE 16 CONFERENCE AND ORAL ARGUMENT IN THE ABOVE−CAPTIONED MATTER IS CONTINUED UNTIL FURTHER NOTICE BY THE COURT. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 3/2/16. 3/3/16 ENTERED AND COPIES E−MAILED. (va, ) (Entered: 03/03/2016) |
| 03/03/2016 | | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by BROOMALL OPERATING COMPANY, LP, SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC.(SEE PAPER #27 FOR PDF)(md) (Entered: 03/04/2016) |
| 03/03/2016 | 30 | Minute Entry for proceedings held before HONORABLE JUAN R. SANCHEZ. Telephone Conference held on 3/2/2016. (va, ) Modified on 3/8/2016 (md). (Entered: 03/04/2016) |
| 03/04/2016 | 31 | ORDER THE MARCH 8, 2016, RULE 16 CONFERENCE AND ORAL ARGUMENT IS RESCHEDULED TO MARCH 17, 2016, AT 10:30 A.M. IN COURTROOM 11A. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 3/4/16. 3/4/16 ENTERED AND COPIES E−MAILED. (va, ) (Entered: 03/04/2016) |
| 03/07/2016 | 32 | ORDER DISMISSING ACTION WITH PREJUDICE PURSUANT TO LOCAL RULE 41.1(b) AS TO DEFENDANT THI OF PENNSYLVANIA AT BROOMALL, LLC. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 3/7/16. 3/7/16 ENTERED AND COPIES E−MAILED. (va, ) (Entered: 03/07/2016) |
| 03/07/2016 | 33 | Minute Entry for proceedings held before HONORABLE JUAN R. SANCHEZ Telephone Conference held on 3/7/16 (jaa, ) (Entered: 03/08/2016) |
| 03/09/2016 | 34 | REQUEST for Leave to File [Defendant Broomall Operating Company LP's Request for Permission to File A Reply Brief in Support of Its Motion to Compel Individual Arbitration and Stay Proceedings] filed by BROOMALL OPERATING COMPANY, LP.Reply Brief. (Attachments: # 1 Exhibit A)(NEWELL, RYAN) Modified on 3/10/2016 (md). (Entered: 03/09/2016) |
| 03/10/2016 | 35 | ORDER GRANTING 34 MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF [18MOTION TO COMPEL. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 3/10/16. 3/11/16 ENTERED AND COPIES E−MAILED. (va, ) (Entered: 03/11/2016) |
| 03/10/2016 | 36 | DEFENDANT BROOMALL OPERATING COMPANY LP'S REPLY BRIEF IN SUPPORT OF ITS 18 MOTION TO COMPEL INDIVIDUAL ARBITRATION AND |

| | | STAY PROCEEDINGS, with Certificate of Service. (va, ) (Entered: 03/11/2016) |
|---|---|---|
| 03/16/2016 | 37 | NOTICE by BROOMALL OPERATING COMPANY, LP, SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC *[Notice of Service of Defendants' Initial Disclosures]* (NEWELL, RYAN) (Entered: 03/16/2016) |
| 03/16/2016 | 38 | Declaration re 18 MOTION to Compel *Individual Arbitration and Stay Proceedings [Sworn Declaration of Kathrine M. Tate]* by BROOMALL OPERATING COMPANY, LP, SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC. (Attachments: # 1 Exhibit A–D)(NEWELL, RYAN) (Entered: 03/16/2016) |
| 03/21/2016 | 39 | ANSWER to 28 Amended Complaint by BROOMALL OPERATING COMPANY, LP, SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC.(NEWELL, RYAN) (Entered: 03/21/2016) |
| 04/11/2016 | 40 | ORDER DENYING 18 MOTION TO COMPEL. IT IS FURTHER ORDERED THE PARTIES SHALL JOINTLY SUBMIT A PROPOSED CASE MANAGEMENT ORDER FOR THIS ACTION TO THE COURT ON OR BEFORE APRIL 15, 2016. SIGNED BY HONORABLE JUAN R. SANCHEZ ON 4/11/16. 4/11/16 ENTERED AND COPIES E–MAILED. (va, ) (Entered: 04/11/2016) |
| 04/25/2016 | 41 | NOTICE OF APPEAL as to 40 Order on Motion to Compel, by BROOMALL OPERATING COMPANY, LP, SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC. Filing fee $ 505, receipt number PPE139221. Copies to Judge, Clerk USCA, Appeals Clerk. (gs) (Entered: 04/25/2016) |
| 04/25/2016 | 42 | Clerk's Notice to USCA re 41 Notice of Appeal : (gs) (Entered: 04/25/2016) |
| 05/04/2016 | | NOTICE of Docketing Record on Appeal from USCA re 41 Notice of Appeal filed by BROOMALL OPERATING COMPANY, LP, SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC. USCA Case Number 16–2089 (va, ) (Entered: 05/04/2016) |
| 05/17/2016 | 43 | NOTICE by BROOMALL OPERATING COMPANY, LP, SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC re USCA Notice of Docketing ROA [Transcript Purchase Order].(NEWELL, RYAN) (FILED IN ERROR; ATTY TO RE–SUBMIT IN HARD COPY) Modified on 5/19/2016 (md). (Entered: 05/17/2016) |
| 05/20/2016 | 44 | Copy of TPO Form re 41 Notice of Appeal : (va, ) (Entered: 05/23/2016) |
| 05/20/2016 | 45 | TRANSCRIPT of Rule 16 Conference held on 3/17/16, before Judge Sanchez. Court Reporter/Transcriber ESR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Transcription Service Drummond. Redaction Request due 6/10/2016. Redacted Transcript Deadline set for 6/20/2016. Release of Transcript Restriction set for 8/18/2016. (va, ) (Entered: 05/23/2016) |
| 05/20/2016 | 46 | Notice of Filing of Official Transcript with Certificate of Service re 45 Transcript – PDF, 5/23/16 Entered and Copies Emailed. (va, ) (Entered: 05/23/2016) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRENE NOVOSAD<br>4916 Knorr Street<br>Philadelphia, PA 19135 | :<br>:<br>: | |
| | : | CIVIL ACTION |
| Plaintiff, | :<br>: | No. |
| v. | :<br>: | |
| THI OF PENNSYLVANIA AT<br>BROOMALL, LLC<br>d/b/a BROOMALL REHABILITATION<br>AND NURSING CENTER<br>50 N. Malin Road<br>Broomall, PA 19008 | :<br>:<br>:<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
| and<br>BROOMALL OPERATING<br>COMPANY, LP<br>50 N. Malin Road<br>Broomall, PA 19008 | :<br>:<br>:<br>:<br>: | **COLLECTIVE ACTION ON BEHALF<br>OF PLAINTIFF AND ALL SIMILARLY<br>SITUATED PERSONS** |
| and<br>SAVA SENIOR CARE, LLC<br>1 Ravinia Dr.<br>Atlanta, GA, 30346 | :<br>:<br>:<br>: | |
| Defendants. | : | |

## COLLECTIVE / CLASS ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### I.    INTRODUCTION

1.      This action has been initiated by Irene Novosad (hereinafter referred to as "Plaintiff," unless indicated otherwise) to redress violations by Defendants of the Fair Labor Standards Act ("FLSA" – 29 U.S.C. 201 *et. seq.*) and applicable state law(s). Plaintiff asserts that she was not properly paid overtime compensation during improperly deducted meal breaks. Plaintiff brings this action along with all employees/former employees who are similarly situated

to her and who also worked in non-supervisory positions for any of Defendant's locations in the last three (3) years.

## II.    JURISDICTION AND VENUE

2.    This action is initiated pursuant to a federal law. The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative facts.

3.    This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.    Pursuant to 28 U.S.C. § 1391(b) (1), venue is properly laid in this district because Defendants are residents of this district.

## III.    THE PARTIES

5.    The foregoing paragraphs are incorporated in their entirety as if set forth in full.

6.    Plaintiff is an adult individual, with an address as set forth in the caption.

7.    Defendant Sava Senior Care, LLC ("Defendant Sava") is a provider of short-term and long-term health care services and provides such services through its affiliated entities throughout the United States, including at the address set forth in the caption.

8.    Defendant THI of Pennsylvania at Broomall, LLC d/b/a Broomall Rehabilitation and Nursing Center ("Defendant THI") is a health care provider located at the above-captioned

address, which is owned and/or operated by and/or was succeeded in interest by Defendant Sava and is the location at which Plaintiff physically worked.

9.    Defendant Broomall Operating Company, LP ("Defendant Operating") is upon information and belief is a subsidiary of Defendant Sava that primarily operates the former business of Defendant THI at 50 N. Malin Rd.[1]

10.    Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single entity and/or joint employer for purposes of the instant action.

11.    Separate and apartment from their functions as joint employers, Defendant Sava and Defendant Operating are successors of Defendant THI as they acquired the business from Defendant THI and carry on the business. It is also unclear at this time if Defendant THI is still monetarily viable.

12.    At all times relevant hereto, Defendants acted by and through its agents, servants and employees, each of whom acted at all relevant times in the course and scope of their employment with and for Defendants.

## IV.    **FACTUAL BACKGROUND**

13.    The foregoing paragraphs are incorporated in their entirety as if set forth in full.

14.    Plaintiff was hired by Defendants on or about August 22, 2011.

15.    Plaintiff was hired as a Licensed Practical Nurse/Charge Nurse.

---

[1] Defendant Sava, Defendant Broomall, and Defendant THI are hereinafter collectively referred to as "Defendants" unless indicated otherwise.

16.     Plaintiff's job duties with Defendants included, but were not limited to, monitoring resident care, performing patient assessments and explaining treatment protocols and procedures to patients.

17.     Plaintiff generally worked from 11:00 p.m. to 7:00 a.m., Monday through Friday, and, regularly worked weekend hours.

18.     Plaintiff regularly worked with Defendant in excess of forty (40) hours per week.

19.     Plaintiff was allotted a ½ hour break per shift, which Defendants referred to as a "lunch" break regardless of the time of day.

20.     Defendants regularly scheduled Plaintiff to work eight (8) hour shifts as the only Licensed Practical Nurse/Charge Nurse on duty.

21.     Plaintiff rarely took the ½ hour "lunch" break because of her work-related responsibilities.

22.     Defendants' management level employees encouraged Plaintiff and other similarly situated employees to clock-out for "lunch" even if they did not use the allotted time to take a break.

23.     Defendants even automatically deducted the ½ hour breaks from Plaintiff's (and other similarly situated employees') pay even if she did not actually take the breaks.

24.     The putative class of collective Plaintiffs includes all non-supervisory employees at any of Defendants' locations who worked through "lunch breaks" for which they were not compensated.

**First Cause of Action**
**Violation of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Overtime Compensation)**
**Named Plaintiff and Collective / Class against All Defendants**

25.     The forgoing paragraphs are incorporated herein in their entirety as if set forth in full.

26.     At all times relevant hereto, Defendants were employers within the meaning of the FLSA. *See* 29 U.S.C. § 203.

27.     At all times relevant hereto, Plaintiff was employed with Defendants as an employee within the meaning of the FLSA. *See* 29 U.S.C. § 203.

28.     Pursuant to the FLSA, an employer must pay an employer overtime compensation for each hour worked beyond forty (40) hours per week. *See* 29 U.S.C. § 207(a)(1).

29.     Defendants willfully violated the FLSA by failing to pay Plaintiff as well as other non-management employees for working through their "lunch" breaks, by knowingly failing to do so, by failing to properly investigate their complaints, and by failing to compensate them for their unpaid overtime prior to, during and following their complaints.

**Second Cause of Action**
**Violation of the Pennsylvania Minimum Wage Act ("PMWA")**
**(Failure to Pay Overtime Compensation)**
**Named Plaintiff and Collective / Class against All Defendants**

30.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31.     Defendants' failure to pay wages and overtime in the aforesaid manners constitutes a violation of the PMWA.

**Third Cause of Action**
**Violation of the Pennsylvania Wage Payment Collection Law ("WPCL")**
**(43 P.S. 260.3(a)-(b))**
**Named Plaintiff and Collective / Class against All Defendants**

32.    The forgoing paragraphs are incorporated herein in their entirety as if set forth in full.

33.    Plaintiff had an agreement with Defendants whereby Defendants agreed to compensate Plaintiff for services performed during her employment.

34.    Other non-management employees are similarly situated to Plaintiff in that they also had agreements with Defendants wherein Defendants agreed to compensate them for work performed.

35.    Defendants failed to compensate Plaintiff and/or other similarly situated non-management employees for all wages owed to them during their employment with Defendants.

36.    Plaintiff and other similarly situated non-management employees performed the agreed-upon services for Defendants, and Defendants failed to properly compensate them for the services rendered as specified by the parties' employment agreement, including but not limited to paying Plaintiff for all hours worked pre-shift, post-shift, during breaks, and on weekends.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination at the hands of Defendants until the date of verdict;

A.    Plaintiff is to be awarded liquidated damages and/or punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct, and to deter Defendants or other employers from engaging in such misconduct in the future;

B.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

C.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

D.    Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Center
Suite 128
Bensalem, PA 19020
(215) 639-0801

Date: November 20, 2015

18a

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

|  |  |  |
|---|---|---|
| Irene Novosad | : | CIVIL ACTION |
| v. | : | |
| THI of Pennsylvania at Broomall, LLC d/b/a Broomall Rehabilitation and Nursing Center, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                                                           ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (X )

| | | |
|---|---|---|
| _11/20/15_ | _Ari R. Karpf_ | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

19a

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 4916 Knorr Street, Philadelphia, PA 19135

Address of Defendant: 50 N. Malin Road, Broomall, PA 19008; 1 Ravinia Drive, Atlanta, GA 30346

Place of Accident, Incident or Transaction: Defendants place of business
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐ No☒

Does this case involve multidistrict litigation possibilities?  Yes☐ No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes☐ No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes☐ No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?  Yes☐ No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes☐ No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

**A.** *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☒ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

**B.** *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Ari R. Karpf, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 11|20|15 _____ ARK2484
Attorney-at-Law                Attorney I.D.# 91538
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11|20|15 _____ ARK2484
Attorney-at-Law                Attorney I.D.# 91538

CIV. 609 (5/2012)

20a

*²JS 44 (Rev. 12/07, NJ 5/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

NOVOSAD, IRENE

**(b)** County of Residence of First Listed Plaintiff  Philadelphia

**(c)** Attorney's (Firm Name, Address, Telephone Number and Email Address)

Karpf, Karpf & Cerutti, P.C., 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020, (215) 639-0801, akarpf@karpf-law.com

## DEFENDANTS

THI OF PENNSYLVANIA AT BROOMALL, LLC d/b/a BROOMALL REHABILITATION AND NURSING CENTER et al.

County of Residence of First Listed Defendant  Delaware

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 362 Personal Injury - Med. Malpractice | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 365 Personal Injury - Product Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☒ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Fair Labor Standards Act "FLSA" (29USC201)

Brief description of cause:
Violations of the FLSA and applicable state law(s).

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) (See instructions):

JUDGE                          DOCKET NUMBER

Explanation:

DATE  11/20/15

SIGNATURE OF ATTORNEY OF RECORD

| Print | Save As... | Export as PDF | Retrieve PDF File | Reset |

21a

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRENE NOVOSAD<br>4916 Knorr Street<br>Philadelphia, PA 19135 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. 2:15-cv-06252-JS |
| v. | : | |
| | : | |
| THI OF PENNSYLVANIA AT<br>BROOMALL, LLC<br>d/b/a BROOMALL REHABILITATION<br>AND NURSING CENTER<br>50 N. Malin Road<br>Broomall, PA 19008<br>and<br>BROOMALL OPERATING<br>COMPANY, LP<br>50 N. Malin Road<br>Broomall, PA 19008<br>and<br>SAVASENIORCARE, LLC<br>1 Ravinia Dr., Suite 1500<br>Atlanta, GA, 30346 | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |

## ANSWER AND DEFENSES OF DEFENDANTS
## BROOMALL OPERATING COMPANY LP AND SAVASENIORCARE, LLC

Defendants BROOMALL OPERATING COMPANY LP ("Broomall") and

SAVASENIORCARE, LLC ("Sava" and collectively with Broomall, "Defendants"), by and

through their undersigned counsel, and subject to the First Defense below, hereby file their

Answer and Defenses to the putative Collective/Class Action Complaint (the "Complaint") filed

by Irene Novosad ("Plaintiff"), showing the Court as follows:

1

## FIRST DEFENSE

Plaintiff's individual claims are subject to mandatory arbitration for the reasons set forth in Defendants' Motion to Compel Individual Arbitration and Stay Proceedings filed contemporaneously herewith. As the Third Circuit Court of Appeals has held that a motion to compel arbitration is the equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), *see Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597-98 (3d Cir. 2004), Defendants are filing their answer out of an abundance of caution and without waiving their contention that this Court does not have the power to resolve any of Plaintiff's claims.

## SECOND DEFENSE

The Court lacks personal jurisdiction over Defendant Sava.

## THIRD DEFENSE

Plaintiff's claims, individually and on behalf of any member of the putative class, are barred, in whole or in part, by the failure to exhaust administrative and/or contractual remedies.

## FOURTH DEFENSE

Plaintiff's claims against Sava, individually and on behalf of any member of the putative class, are barred, in whole or in part, because Sava never employed Plaintiff or any member of the putative class, and took no adverse action relative to Plaintiff or any other member of the putative class.

## FIFTH DEFENSE

Plaintiff's claims, individually and on behalf of any member of the putative class, fail, in whole or in part, because Defendants acted in good faith and without willfulness, malice, or intent to injure.

2

## SIXTH DEFENSE

Plaintiff's claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent Defendants had any absolute and/or qualified privilege.

## SEVENTH DEFENSE

Plaintiff's claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent that the alleged harm suffered by Plaintiff or any members of the putative class was not caused by any act or omission of Defendants.

## EIGHTH DEFENSE

Plaintiff's claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent that any damages incurred by Plaintiff or any members of the putative class were caused by their own acts or omissions, or the acts or omissions of third parties other than Defendants.  Furthermore, as to members of the putative class only, such claims may be subject to dismissal, in whole or in part, based on the after-acquired evidence doctrine.

## NINTH DEFENSE

The damages Plaintiff seeks, for herself and on behalf of the putative class, would be disproportionate to the harm alleged or suffered by Plaintiff or any members of the putative class, would be excessive, and would violate Defendants' constitutional rights.

## TENTH DEFENSE

The damages Plaintiff seeks, for herself and on behalf of the putative class, must be set off against any settlement or other recoveries by Plaintiff or any member of the putative class.

8509423

### ELEVENTH DEFENSE

Plaintiff's claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent the claims are barred by waiver, estoppel, judicial estoppel, laches, and/or unclean hands. Furthermore, as to members of the putative class only, such claims may be subject to dismissal on the grounds of accord and satisfaction and release.

### TWELFTH DEFENSE

Plaintiff's claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent the claims are barred by the applicable statute of limitations.

### THIRTEENTH DEFENSE

Plaintiff's claims, individually and on behalf of any member of the putative class, are barred, in whole or in part, by the failure to mitigate alleged damages.

### FOURTEENTH DEFENSE

Defendants did not willfully violate the Fair Labor Standards Act ("FLSA") or any other legal requirement relative to Plaintiff or any member of the putative class.

### FIFTEENTH DEFENSE

While Defendants expressly deny that they acted in any unlawful manner, any act or omission giving rise to this action was non-willful, in good faith, and based on reasonable grounds for believing that the act or omission did not violate the FLSA.

### SIXTEENTH DEFENSE

Plaintiff's claims and those of members of the putative class are barred, in whole or in part, by their status as exempt employees under the FLSA.

4

## SEVENTEENTH DEFENSE

Defendants acted, at all times relevant to the Complaint, in compliance with the FLSA and are entitled to every defense afforded by the FLSA.

## EIGHTEENTH DEFENSE

Plaintiff's claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent Plaintiff and/or members of the putative class did not comply with requirements of the FLSA and/or the policies promulgated by Broomall to ensure that Plaintiff and/or members of the putative class were paid for all time worked.

## NINETEENTH DEFENSE

Plaintiff's claims and those of members of the putative class are barred, in whole or in part, because the requirements for a collective and/or class action cannot be satisfied and the putative class is not certifiable.

## TWENTIETH DEFENSE

This case is not appropriate for class certification to the extent Plaintiff fails to demonstrate that the putative class is so numerous that joinder of all members would be impracticable.

## TWENTY-FIRST DEFENSE

This case is not appropriate for class certification to the extent Plaintiff fails to demonstrate that there are questions of law or fact common to the putative class.

## TWENTY-SECOND DEFENSE

This case is not appropriate for class certification to the extent Plaintiff fails to demonstrate that her claims or defenses are typical of the claims or defenses of the putative class.

5

## TWENTY-THIRD DEFENSE

This case is not appropriate for class certification to the extent Plaintiff fails to demonstrate that she will fairly and adequately protect the interests of the putative class.

## TWENTY-FOURTH DEFENSE

This case is not appropriate for class certification to the extent Plaintiff fails to demonstrate that prosecuting separate actions by individual putative class members would create a risk of inconsistent or varying adjudications.

## TWENTY-FIFTH DEFENSE

This case is not appropriate for class certification to the extent Plaintiff fails to demonstrate that questions of law or fact common to putative class members predominate over any questions affecting only individual members.

## TWENTY-SIXTH DEFENSE

This case is not appropriate for class certification to the extent Plaintiff fails to demonstrate that a class or collective action is superior to other available methods for fairly and efficiently adjudicating the controversies.

## TWENTY-SEVENTH DEFENSE

Plaintiff's claims are subject to dismissal, in whole or in part, to the extent the claims made in the Complaint on behalf of Plaintiff and/or members of the putative class are barred by *res judicata* and/or collateral estoppel or the failure to schedule such claims as assets in prior proceedings under Title 11 of the United States Code.

6

### TWENTY-EIGHTH DEFENSE

Plaintiff's claims on behalf of any member of the putative class are subject to dismissal, in whole or in part, to the extent that any member of the putative class did not incur a cognizable injury, did not incur any damages, or otherwise would lack standing.

### TWENTY-NINTH DEFENSE

Plaintiff's claims and those of members of the putative class are subject to dismissal, in whole or in part, to the extent that their damages are *de minimis* under the FLSA.

### THIRTIETH DEFENSE

This case is not appropriate for class certification to the extent Plaintiff and/or the putative class members fail to demonstrate that they are similarly situated. The potential claims of the putative class members reflect variability.

### THIRTY-FIRST DEFENSE

This case is not appropriate for class certification to the extent Plaintiff and/or the putative class members fail to establish meaningful identifiable facts or a legal nexus that bind the claims asserted in the Complaint.

### THIRTY-SECOND DEFENSE

This case is not appropriate for class certification to the extent Plaintiff and/or the putative class members fail to establish that they were harmed and/or damaged by a common policy, plan, or uniform practice that violates the law.

### THIRTY-THIRD DEFENSE

Defendants reserve the right to assert any and all additional defenses as may be determined during the course of discovery.

8509423

Subject to and without waiving any of the Defenses set forth above, Defendants respond to the individually numbered paragraphs of the Complaint as follows:

1.      Defendants admit that Plaintiff purports to state causes of action for alleged violations of the FLSA and other Pennsylvania statutory authorities. Defendants further admit that Plaintiff seeks to bring this action on behalf of others in the form of a collective and/or class action. Defendants expressly deny that Plaintiff's claims, individually or on behalf of any of the putative class members, have any validity, and deny that this action is appropriate for class or collective action treatment. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 1 of the Complaint.

2.      Subject to the First Defense stated above, Defendants admit that this Court has jurisdictional authority to consider their motion to compel arbitration and retain jurisdiction during the pendency of the arbitration for certain limited purposes, such as resolving disputes relating to arbitrator selection, compelling witnesses, and ultimately enter any award issued in arbitration. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 2 of the Complaint.

3.      Defendants expressly deny that the Court has personal jurisdiction over Sava. In further response, and subject to the First Defense stated above, Defendants admit that this Court has jurisdictional authority to consider their motion to compel arbitration and retain jurisdiction during the pendency of the arbitration for certain limited purposes, such as resolving disputes relating to arbitrator selection, compelling witnesses, and ultimately enter any award issued in arbitration. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 3 of the Complaint.

8509423

4. Subject to the First Defense stated above, Defendants admit that venue lies for this Court to consider their motion to compel arbitration and retain jurisdiction during the pendency of the arbitration for certain limited purposes, such as resolving disputes relating to arbitrator selection, compelling witnesses, and ultimately to enter any award issued in arbitration. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 4 of the Complaint.

5. Defendants incorporate their responses to Paragraphs 1 through 4 as if fully set forth herein.

6. Defendants admit only that Plaintiff is an adult individual. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6 of the Complaint and therefore deny those allegations.

7. Defendants deny the allegations in Paragraph 7 of the Complaint.

8. Denied as stated. In further response, Defendants admit only that Plaintiff previously worked at the facility located at 50 N. Malin Road, Broomall, Pennsylvania 19008 (the "Facility"), and that Broomall took over the operations of the Facility from Defendant THI of Pennsylvania at Broomall d/b/a Broomall Rehabilitation and Nursing Center ("Defendant THI") in January 2014. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 8 of the Complaint.

9. Defendants admit the allegations in Paragraph 9 of the Complaint.

10. Defendants deny the allegations in Paragraph 10 of the Complaint.

11. Denied as stated. In further response, Defendants admit only that Broomall took over operations of the Facility in January 2014. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 11 of the Complaint and expressly deny that Plaintiff or any of

9

the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

12. Paragraph 12 of the Complaint contains Plaintiff's statement of a legal conclusion to which Defendants are not required to respond. Additionally, the allegations in Paragraph 12 are too vague and ambiguous to allow for a reasoned response. For each of these reasons, the allegations in Paragraph 12 of the Complaint are denied.

13. Defendants incorporate their responses to Paragraphs 1 through 12 as if fully set forth herein.

14. On information and belief, Defendants admit that Plaintiff was hired by Defendant THI on or about August 22, 2011. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 14 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

15. Denied as stated. On information and belief, Defendants admit that Plaintiff was hired by Defendant THI as a Licensed Practical Nurse/Charge Nurse on or about August 22, 2011 and was later hired by Broomall in that same position. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 15 of the Complaint.

16. Denied as stated. On information and belief, Defendants admit that Plaintiff performed the job functions of monitoring resident care, performing patient assessments and explaining treatment protocols and procedures to patients for Defendant THI and later performed these or similar functions for Broomall. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 16 of the Complaint and expressly deny that Plaintiff or any of the

8509423

other putative class members have ever been employed by or performed any job duties on behalf of Sava.

17.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint as they relate to Plaintiff's employment with Defendant THI and therefore deny those allegations. In further response, Defendants admit only that Plaintiff generally worked her assigned shifts for Broomall during her employment with Broomall. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 17 of the Complaint as stated and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

18.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint as they relate to Plaintiff's employment with Defendant THI and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 18 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

19.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint as they relate to Plaintiff's employment with Defendant THI and therefore deny those allegations. In further response, Defendants admit only that, while employed by Broomall, Plaintiff was allowed and expected to take an uninterrupted half-hour meal break per eight-hour shift. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 19 of the Complaint and expressly deny that

8509423

Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

20.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint as they relate to Plaintiff's employment with Defendant THI and therefore deny those allegations. In further response, Defendants admit only that Plaintiff generally worked her assigned shifts for Broomall during her employment with Broomall. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 20 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

21.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint as they relate to Plaintiff's employment with Defendant THI and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 21 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

22.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint as they relate to Plaintiff's or the putative class members' employment with Defendant THI and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 22 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint as they relate to Plaintiff's or the

12

putative class members' employment with Defendant THI and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 23 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint as they relate to Plaintiff's or the putative class members' employment with Defendant THI and therefore deny those allegations. In further response, Defendants admit only that Plaintiff purports to assert several causes of action on behalf of herself and others based on Defendants' alleged failure to properly compensate workers who purportedly worked through meal breaks. Defendants expressly deny that Plaintiff or any member of the putative class is entitled to any of the relief requested, that this case is proper for class or collective treatment, and that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

25.     Defendants incorporate their responses to Paragraphs 1 through 24 as if fully set forth herein.

26.     Paragraph 26 of the Complaint contains Plaintiff's statement of a legal conclusion to which Defendants are not required to respond. To the extent Paragraph 26 contains any factual allegations, Defendants admit only that Plaintiff was employed by Broomall from approximately January 1, 2014 to September 22, 2015 and that Plaintiff was employed previously by Defendant THI. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 26 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

13

27.     Paragraph 27 of the Complaint contains Plaintiff's statement of a legal conclusion to which Defendants are not required to respond. To the extent Paragraph 27 contains any factual allegations, Defendants admit only that Plaintiff was employed by Broomall from approximately January 1, 2014 to September 22, 2015 and that Plaintiff was employed previously by Defendant THI. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 27 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

28.     Paragraph 28 of the Complaint contains Plaintiff's statement of a legal conclusion to which Defendants are not required to respond. To the extent Paragraph 28 contains any factual allegations, Defendants deny such factual allegations. Furthermore, Defendants state that any statutory authority relied on by Plaintiff in support of her claims or those of the putative class members, including 29 U.S.C. § 207(a)(1), speaks for itself, and Defendants deny any allegations in Paragraph 28 to the extent they vary from the language contained in such authorities.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint as they relate to Plaintiff's or the other putative class members' employment with Defendant THI and therefore deny those allegations. In further response, Defendants deny the remaining allegations in Paragraph 29 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

30.     Defendants incorporate their responses to Paragraphs 1 through 29 as if fully set forth herein.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint as they relate to Plaintiff's or the other

14

putative class members' employment with Defendant THI and therefore deny those allegations. In further response, Defendants deny the remaining allegations in Paragraph 31 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

32.     Defendants incorporate their responses to Paragraphs 1 through 31 as if fully set forth herein.

33.     Paragraph 33 of the Complaint contains Plaintiff's statement of a legal conclusion to which Defendants are not required to respond. To the extent Paragraph 33 contains any factual allegations, Defendants admit only that Plaintiff was employed by Broomall from approximately January 1, 2014 to September 22, 2015 and that Plaintiff was employed previously by Defendant THI. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 33 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava.

34.     Paragraph 34 of the Complaint contains Plaintiff's statement of a legal conclusion to which Defendants are not required to respond. To the extent Paragraph 34 contains any factual allegations, Defendants admit only that Plaintiff was employed by Broomall from approximately January 1, 2014 to September 22, 2015 and that Plaintiff was employed previously by Defendant THI. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 34 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava, and that this class is appropriate for class or collective treatment.

35.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint as they relate to Plaintiff's or the other

putative class members' employment with Defendant THI and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 35 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava, and that this class is appropriate for class or collective treatment.

36.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint as they relate to Plaintiff's or the other putative class members' employment with Defendant THI and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 36 of the Complaint and expressly deny that Plaintiff or any of the other putative class members have ever been employed by or performed any job duties on behalf of Sava, and that this class is appropriate for class or collective treatment.

37.     In further response, all allegations, headings, and unnumbered paragraphs not expressly admitted herein are denied. Additionally, Defendants deny that Plaintiff or any member of the putative class is entitled to any of the relief requested in the Prayer for Relief, as set forth in the unnumbered "WHEREFORE" paragraph in the Complaint, including its subparts A through D.

WHEREFORE, Defendants request that Plaintiff's Complaint be dismissed with prejudice, that judgment be entered in Defendants' favor, that all costs be taxed against Plaintiff, and that this Court award such other and further relief as the Court deems fair, just, and equitable.

8509423

Dated: February 10, 2016

ARNALL GOLDEN GREGORY LLP

Henry M. Perlowski (*pro hac vice application to be submitted*)
Chesley S. McLeod (*pro hac vice application to be submitted*)
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404.873.8684
henry.perlowski@agg.com
chesley.mcleod@agg.com

*Attorneys for Defendants Broomall Operating Company LP and SavaSeniorCare, LLC*

Respectfully submitted,

CONNOLLY GALLAGHER LLP

/s/ *Josiah R. Wolcott*
Ryan P. Newell (Pa. Bar ID #207757;
*pro hac vice* application pending)
Josiah R. Wolcott (Pa. Bar ID #202222)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
rnewell@connollygallagher.com
jwolcott@connollygallagher.com

17

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing ANSWER AND DEFENSES OF DEFENDANTS BROOMALL OPERATING COMPANY LP AND SAVASENIORCARE, LLC with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Ari R. Karpf, Esq.
akarpf@karpf-law.com
Tim Seiler
tseiler@karpf-law.com
KARPF, KARPF, & CERUTTI, P.C.
3331 Street Road
Two Greenwood Center
Suite 128
Bensalem, PA 19020
*Attorneys for Plaintiff*

/s/ *Josiah R. Wolcott*
Ryan P. Newell (Pa. Bar ID #207757; *pro hac vice* application pending)
Josiah R. Wolcott (Pa. Bar ID #202222)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
rnewell@connollygallagher.com
jwolcott@connollygallagher.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRENE NOVOSAD<br>4916 Knorr Street<br>Philadelphia, PA 19135 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | No. 2:15-cv-06252-JS |
| v. | : <br> : | |
| THI OF PENNSYLVANIA AT<br>BROOMALL, LLC<br>d/b/a BROOMALL REHABILITATION<br>AND NURSING CENTER<br>50 N. Malin Road<br>Broomall, PA 19008<br>and<br>BROOMALL OPERATING<br>COMPANY, LP<br>50 N. Malin Road<br>Broomall, PA 19008<br>and<br>SAVASENIORCARE, LLC<br>1 Ravinia Dr., Suite 1500<br>Atlanta, GA, 30346 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

## DEFENDANTS' MOTION TO COMPEL
## INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS

Defendants Broomall Operating Company LP ("Broomall") and SavaSeniorCare, LLC ("Sava" and together with Broomall, "Defendants"), by and through their undersigned counsel, hereby move to compel arbitration of the individual claims brought by Plaintiff Irene Novosad ("Plaintiff") as set forth in each count of her Complaint (Doc. No. 1) and to stay this litigation pending completion of arbitration.[1] As outlined in further detail in Defendants' Memorandum of

---

[1] Broomall and Sava each reserve all other defenses asserted to the instant lawsuit brought by Plaintiff, as stated in Defendants' contemporaneously filed Answer, including, without limitation, Sava's contention that this court lacks personal jurisdiction over Sava.

8508355

1

Law, filed contemporaneously herewith, Plaintiff's individual claims are subject to mandatory

arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, and the written

arbitration agreement that Plaintiff entered into with Broomall.

The bases for this Motion, and all supporting documentation and authorities, along with a

proposed form Order in accordance with Local Rule 7.1(a), are set forth in Defendants'

accompanying Memorandum of Law, which is incorporated herein by reference.

Respectfully submitted, this 10th day of February, 2016.

CONNOLLY GALLAGHER LLP

ARNALL GOLDEN GREGORY LLP

/s/ *Josiah R. Wolcott*
Ryan P. Newell (Pa. Bar ID #207757;
*pro hac vice* application pending)

Henry M. Perlowski (*pro hac vice*
*application to be submitted*)
Chesley S. McLeod (*pro hac vice*
*application to be submitted*)
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404.873.8684
henry.perlowski@agg.com
chesley.mcleod@agg.com

Josiah R. Wolcott (Pa. Bar ID #202222)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
rnewell@connollygallagher.com
jwolcott@connollygallagher.com

*Attorneys for Defendants Broomall Operating*
*Company LP and SavaSeniorCare, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Ari R. Karpf, Esq.
akarpf@karpf-law.com
Tim Seiler, Esq.
tseiler@karpf-law.com
KARPF, KARPF, & CERUTTI, P.C.
3331 Street Road
Two Greenwood Center
Suite 128
Bensalem, PA 19020
*Attorneys for Plaintiff*

/s/ *Josiah R. Wolcott*
Ryan P. Newell (Pa. Bar ID #207757; *pro hac vice* application pending)
Josiah R. Wolcott (Pa. Bar ID #202222)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
rnewell@connollygallagher.com
jwolcott@connollygallagher.com

8508355

42a

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IRENE NOVOSAD<br>4916 Knorr Street<br>Philadelphia, PA 19135 | :<br>:<br>:<br>:     **CIVIL ACTION**<br>Plaintiff,    :     No. 15-6252<br>v.         :<br>: |

IRENE NOVOSAD
4916 Knorr Street
Philadelphia, PA 19135

      Plaintiff,

   v.

THI OF PENNSYLVANIA AT
BROOMALL, LLC
d/b/a BROOMALL REHABILITATION
AND NURSING CENTER
50 N. Malin Road
Broomall, PA 19008
    and
BROOMALL OPERATING
COMPANY, LP
50 N. Malin Road
Broomall, PA 19008
    and
SAVASENIORCARE, LLC
1 Ravinia Dr., Suite 1500
Atlanta, GA, 30346

    Defendants.

:      **CIVIL ACTION**

:      No. 15-6252

:      **JURY TRIAL DEMANDED**

## SWORN DECLARATION OF KATHRINE M. TATE

    1.     My name is Kathrine M. Tate. I am over the age of eighteen (18) and am competent to give this sworn declaration. I have personal knowledge of all matters set forth herein. This declaration is given for use in support of Defendants' Motion to Compel Arbitration and Stay Litigation submitted contemporaneously herewith, and for any other purpose permitted by law.

    2.     I am employed by non-party SavaSeniorCare Administrative Services, LLC ("Sava Administrative Services"). Pursuant to a Back Office Service Agreement, Sava Administrative Services has provided various support services, including employment-related

support services, to Defendant Broomall Operating Company LP ("Broomall"), the entity that employed Plaintiff Irene Novosad ("Plaintiff") after Broomall acquired the facility in which Plaintiff had worked under prior ownership. In connection with my employment with Sava Administrative Services, I have become familiar with the contents of the personnel file maintained at the Broomall facility for Plaintiff.

3.    In preparation for the acquisition of the Broomall facility, Plaintiff and other employees of the Broomall facility were presented with certain form documents by Broomall, including an Employee Dispute Resolution Book (the "EDR Book"), a true and correct copy of which is attached as Exhibit A hereto. This form EDR Book was prepared by Sava Administrative Services and is made available for use by various affiliated operating companies, like Broomall, who employ the individuals working at each facility.

4.    In connection with her employment with Broomall, Plaintiff accepted the terms of the EDR Book by signing the "Employment Dispute Resolution Program Acknowledgement" form (the "Acknowledgement") included as the last page of the EDR Book. A true and correct copy of the Acknowledgement signed by Plaintiff and maintained in the ordinary course of business in her personnel file is attached as Exhibit B hereto. Plaintiff also signed another "Acknowledgement and Certification of Accuracy" form stating that upon accepting employment with Broomall she agreed "to abide by the facility policies and procedures, *Code of Conduct, Employee Handbook,* and the **EDR Booklet**." (Emphasis in original.) A true and correct copy of this second acknowledgement form signed by Plaintiff and maintained in the ordinary course of business in her personnel file is attached as Exhibit C hereto.

*[signature appears on following page]*

2

45a

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 5, 2016.

Kathrine M. Tate

# EXHIBIT A
# To Tate Declaration

# Employment Dispute Resolution Book

One Ravinia Drive
Suite 1500
Atlanta, GA 30346

21999 (01/08)

## Introduction

We are committed to building positive employee relations, encouraging open communication and respecting the rights and dignity of others. Only by working well together can we make a difference in the lives of those who depend on us to provide the highest quality healthcare.

But sometimes, even with our best efforts, problems arise in work relationships. These problems can escalate into larger disputes if no options for resolving them are available. Our **Employment Dispute Resolution (EDR) Program** provides a process and the resources for finding solutions to employee problems. Because we care about our employees and believe it is important to treat employees fairly, the Program incorporates four steps: *(1) Open Door, (2) Facilitation, (3) Mediation and (4) Arbitration.* If the parties cannot mutually resolve the dispute in the first three steps, the Company has agreed to submit the dispute to an outside, impartial arbitrator and to accept the decision of the arbitrator as final and binding.

Not only does the EDR Program ensure a fair resolution to disputes, but it is often a much faster and less expensive process. Instead of possibly waiting for years to resolve a dispute in court, under the EDR Program disputes may be resolved in weeks or months. In addition, using the court system could be much more expensive than the EDR Program.

Your decision to accept employment or to continue employment with the Company constitutes your agreement to be bound by the EDR Program. Likewise, the Company agrees to be bound by the EDR Program. This mutual agreement to arbitrate claims means that both you and the Company are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial on issues covered by the EDR Program. However, no remedies that otherwise would be available to you or the company in a court of law will be forfeited by virtue of the agreement to use and be bound by the EDR Program. This Program covers only claims by individuals and does not cover class or collective actions.

This booklet presents the basic procedures that govern the EDR Program and the four program steps for addressing employee issues and concerns. Read it carefully. It will help you understand your rights and responsibilities in the Program. Please note the Program has detailed rules specific only to the Mediation and Arbitration steps that are not contained in this booklet, but are available upon request. If you have questions, you may consult your Region Human Resources representative or the EDR Program Administrator.

*All references to the "Company" in this booklet refer to subsidiaries that employ the individuals working there.*

---

*Employment Dispute Resolution*                                                  Page 1 of 15

# Employment Dispute Resolution Program

☐ **Provides four steps for resolving work-related disputes.**

☐ **Creates easier access to different levels of management.**

☐ **Keeps the lines of communication open.**

☐ **Facilitates good working relationships.**

☐ **Helps create an environment that encourages problem solving.**

☐ **Assures the fair resolution of problems in a timely manner.**

☐ **Promotes confidentiality.**

---

**Effective Date, Duration and Impact of the EDR Program Upon Your Employment**

The EDR Program is the process for resolving most workplace disputes between you and the Company, including, but not limited to, disputes concerning legally protected rights such as freedom from discrimination, retaliation or harassment. It remains effective for the entire length of your employment and continues in effect should your employment end. All employees must use the EDR Program as the sole means of dispute resolution.

The EDR Program does not establish any of the terms of your employment other than to act as a mechanism for resolving employment disputes. Therefore, nothing in the EDR Program or in these procedures creates a contract of employment, express or implied, for any period of time, nor does it alter the at-will status of your employment with the Company.

**Employees Covered by the EDR Program**

The EDR Program covers all management and non-union employees of the Company. The EDR Program does not apply to employees who are covered by a collective bargaining agreement.

**Covered Disputes**

Disputes covered under the EDR Program pertain to claims such as discipline, discrimination, fair treatment, harassment, termination and other legally protected rights.

Disputes not covered under the EDR Program relate to workers' compensation, unemployment benefits, health, welfare and retirement benefits and claims by the Company for injunctive relief to protect trade secrets and confidential information.

You retain the right to pursue employment disputes before federal or state administrative agencies. Nothing in the EDR Program prevents you from filing a claim with a federal or state administrative agency or from cooperating in a federal or state agency investigation.

**Law Governing the EDR Program**

The substantive law that governs the employment disputes that you take to mediation or to arbitration under the EDR Program is the same state and federal law that would have applied had your claims been heard in state or federal court.

The application, interpretation and enforcement of the EDR Program is covered by the Federal Arbitration Act. If any court should find that the Federal Arbitration Act does not apply to the arbitration of your dispute with the Company, then the application, interpretation and enforcement of the EDR Program shall be covered by the law of the state in which you work.

**Confidentiality**

All proceedings and all documents prepared in connection with any of the EDR Program steps are confidential. Unless required by law, no EDR Program proceedings or documents shall be disclosed to any person other than to the participants in those proceedings, representing counsel, witnesses, the mediator, the arbitrator, and, if applicable, the court and its staff.

**Administration of EDR**

To ensure the success of the EDR Program and promote employee awareness and understanding of how it works, an individual acts as the EDR Program Administrator. He or she oversees and manages the EDR Program to ensure it is properly administered and will answer questions, process requests and provide counseling, as necessary.

*Employment Dispute Resolution*

## Employment Dispute Resolution Program Consists of Four Steps:



**STEP 1**
**Open Door**
All levels of management are available to hear your concerns.

→ Problem Mutually Solved

**STEP 2**
**Facilitation**
Your Region Human Resources Representative is your Facilitator working toward a mutual solution.

→ Problem Mutually Solved

**STEP 3**
**Mediation**
A neutral third party assists in reaching resolution.

→ Problem Mutually Solved

**STEP 4**
**Arbitration**
An impartial, outside party hears the issues and makes a decision.

**Resolution**

---

## Step One: Open Door



**STEP 1**
**Open Door**
All levels of management are available to hear your concerns.

→ PROBLEM MUTUALLY RESOLVED

→ MOVE TO STEP 2 FACILITATION

Open Door is an informal way of resolving problems early, preserving working relationships and promoting a productive work environment for everyone. Under the Open Door Step, you are encouraged to take your concerns first to your supervisor. Trying to resolve problems at work with the person to whom you report is usually the quickest and most direct way to find solutions. Because your supervisor is close to your situation, he or she may be in a position to offer a different perspective or some new facts that may be helpful to you. However, if circumstances exist that cause you to be uncomfortable going to your direct report, you may bring your concerns to any supervisor or manager you choose. It is important to know that the Company will not retaliate against any employee in any way for using the Open Door.

You may raise any work-related matter through the Open Door. You may voice your concerns verbally or you may put them in writing. However, you may not attempt to resolve your dispute through any of the other EDR Program steps if you have not attempted to resolve your dispute first by using the Open Door. Even though you are not bound by the outcome of the Open Door, it is a required first step of the program.

The Open Door Step encourages feedback to all levels of management; however, as a general rule, the process should progress as follows:

☐ Discuss your problem with your immediate supervisor.
☐ If your problem is not resolved or handled to your satisfaction, you may take your concerns to the next level of management. Do this as promptly as possible to ensure a timely resolution to your problem.
☐ At the facility level, all facility problems, not directly involving the Administrator, should be reviewed with your Administrator before approaching anyone at the regional level. If you have reviewed your problem with your Administrator and still feel the problem needs further review, you may take your dispute to the Regional Vice President in charge of Operations for your Region. He or she will review your problem and respond to you.

The Open Door gives you the ability to express your concerns and seek a solution that is mutually acceptable to you and the Company. If you find you are unable to find a satisfactory solution, you may move to Step Two.

## Step Two: Facilitation



Ideally, everyone would like disputes to be resolved in Step One. However, in some cases, other action may be necessary.

If you feel that the Open Door has not resolved your concern, the next step is Facilitation. In Facilitation, you contact your Region Human Resources Representative. He or she will act as the key facilitator in this step of the EDR Program. In this role he or she will:

☐ Ensure all reasonable avenues of the Open Door process have been explored.
☐ Investigate all aspects of the dispute and help both sides consider the best way to settle the issue.
☐ Keep the lines of communication open.

Your Region Human Resources Representative has been trained to work with all parties to reach a mutually acceptable resolution. However, in some cases, it will not be possible to bring the parties to a common agreement. In this case:

☐ If your dispute does not involve a legally protected right, your Region Human Resources Representative will communicate the final decision regarding the outcome at the end of Step Two.
☐ If your problem involves a legally protected right, you may proceed to Step Three of the EDR Program. Your Region Human Resources Representative will refer your case to the EDR Administrator.

## Step Three: Mediation



If you have pursued a resolution for a legally protected right through both Step One and Step Two and still are not satisfied, you may seek a resolution through the more formal process of Mediation. Mediation is a meeting at which an outside, neutral third party, called a mediator, helps you and the Company find a solution that is mutually acceptable. The selection of the mediator is made through the American Arbitration Association, a similar organization or by the EDR Administrator directly with a neutral party. The mediator will be experienced and knowledgeable in the field of employment law and will be impartial and independent. The mediator does not make a determination that either your position or the Company's position is right or wrong. Instead, the mediator acts as a "go-between" who works with both sides in an effort to come to a resolution. He or she helps the parties reach agreement by:

☐ Identifying issues.
☐ Exploring any and all avenues that could lead to resolution.
☐ Attempting to find solutions that may be satisfactory to both parties.
☐ Creating an atmosphere that encourages communication and mutual agreement.

To begin mediation, your Region Human Resources Representative will refer your case to the EDR Administrator. Forms will be sent to you and the process will begin upon receipt of the completed documents. Participation in mediation includes a $50.00 initiation fee. The initiation fee will be used to pay a portion of the administrative fees charged by the organization or individual conducting the mediation. The Company will pay the remainder of the fees.

In the Mediation process, you have the option of requesting legal representation. If you choose to have legal representation at the Mediation, the Company will also have an attorney present. The Company will not bring an attorney if you do not bring an attorney. When you do seek to have legal representation, the Company may in some circumstances provide assistance in paying some of your legal fees. For information regarding reimbursement of these legal fees, see the Legal Consultation Fees section of this booklet.

The Mediation is confidential. No statements made in the process of trying to resolve your dispute may be used in any later proceeding for any purposes. The Mediation will take place at a location that is convenient and acceptable to you and to the Company

At the Mediation, the mediator usually begins with a meeting at which both you and the Company representative are present. Each of you will be asked to state your positions so the mediator can get a good understanding of the situation. The mediator may then meet separately with each of you to get clarification and to find common ground for a solution. The mediator may continue meetings with the local group or may move back and forth between you and the Company until the case is settled or until it is determined a settlement cannot be reached. If you and the Company do reach an agreement through the mediator, it will be documented and signed by each of you. The specific rules that govern this process are available upon request.

You are not bound by the outcome of the Mediation; however, in most cases, it is a required step in the EDR Program. The EDR Program Administrator has the discretion of allowing you in some circumstances to move to Step Four without taking advantage of the Mediation Step.

## Step Four: Arbitration



**STEP 4**

**Arbitration**

An impartial, outside party hears the issues and makes a decision.

**Resolution**

Arbitration is the final step in the EDR Program for disputes involving your legally protected rights. Like Mediation, Arbitration is a process that involves an outside, third party that is completely neutral. Unlike Mediation, your dispute is presented to an arbitrator who makes a judgment and a decision, which is binding on both parties. Although the Arbitration step is somewhat less formal than going to court, the Program has specific rules that governed the proceeding. You may request a copy of these rules from the EDR Program Administrator. The Arbitration hearing can take several hours or several days, whatever is necessary to ensure a full and fair development of your case and the Company's case. At that point, the arbitrator will decide who wins and what remedies are appropriate.

If the arbitrator decides in your favor, you can be awarded any remedy you might obtain from a court of law, including back pay, reinstatement, attorneys' fees and punitive damages. The selection of the arbitrator is made through the American Arbitration Association, a similar organization or directly with a neutral party. A hearing date at a neutral location that is satisfactory to both you and the Company is arranged.

If mediation is not successful, your Region Human Resources Representative will request the EDR Administrator to provide you with the required arbitration documents. You begin the arbitration process by returning the completed documents. As in Mediation, a $50.00 initiation fee is required for participation in Arbitration. Your initiation fee pays a portion of the administration costs. The Company pays the remainder of the administration costs as well as the arbitrator's fees and expenses.

As in Mediation, an attorney may represent you. If you seek legal representation, you are responsible for any attorney's fees you may incur. You may qualify for assistance from the Company in paying legal fees. For details on this, see the Legal Consultation Fees section in this booklet.

Prior to the Arbitration hearing, documents are exchanged and, in some cases, depositions are taken. The arbitrator runs the proceedings that are held privately in an informal setting. The arbitrator is the sole decision-maker. There is no jury. Evidence is presented to the arbitrator, testimony is given and witnesses are questioned and cross-examined by both you and the Company or by the attorney representing you and the Company. It is important that you assert at the time of the arbitration any and all claims that you believe you may have against the Company. At the end of the Arbitration, the arbitrator issues a written decision that is binding on both you and the Company.

## Legal Consultation Fees

When your dispute involves a legally protected right such as discrimination, harassment or wrongful discharge, you may apply for reimbursement for legal fees you incur. The legal consultation is with an attorney of your choice; however, you must get approval from the EDR Program Administrator prior to consulting counsel.

Reimbursements for legal consultations are subject to a deductible, a co-payment and an annual limit. The following requirements apply to all approved consultations:

- You pay a $50.00 deductible.
- After the deductible, you pay 20% of the balance of the fee charged for the consultation. The Company pays 80% of the balance.
- The maximum benefit paid to you is $2,000. All charges beyond $2,000 are your responsibility.

**53a**

## Questions and Answers

**Q:** What do I do if my supervisor ignores the Open Door Step or starts to make things difficult for me after I present my issue?

**A:** If the first person you approach in the Open Door Step is unresponsive or retaliates against you for using it, go to the next level of management to resolve your problem. You may also contact your Region Human Resources Representative or the EDR Program Administrator for assistance.

**Q:** How can I be assured the Region Human Resources Representative will really try to help me in resolving my dispute?

**A:** It is in the best interest of both parties to bring disputes to a speedy, agreeable solution. The Region Human Resources Representatives have received special training to assist them in doing just that. They have the ability to remain neutral and review issues from a standpoint that is independent of your facility.

**Q:** Both the mediator and the arbitrator are neutral third party experts from outside the Company to help resolve disputes. What is the difference between Mediation and Arbitration?

**A:** In Mediation, the mediator helps the parties reach a mutually acceptable solution, but does not give a final decision. In Arbitration, the arbitrator, after hearing both sides of the dispute, makes a decision that is binding on all parties. The arbitrator's decision cannot be appealed, except in rare circumstances.

**Q:** Are there guidelines to make sure the Mediation and Arbitration processes are fair?

**A:** Employment Dispute Resolution Program Rules govern the mediation and arbitration processes. Contact the EDR Program Administrator if you want a copy of these rules.

**Q:** Do I have to go through Mediation before proceeding to Arbitration?

**A:** Usually it is to the benefit of both parties to attempt to settle matters themselves. The EDR Program is designed to keep lines of communication open, allowing you and the Company opportunities to resolve differences. Under some circumstances you may proceed directly to Arbitration if approved by the EDR Program Administrator. Such approval is in the sole discretion of the Program Administrator.

**Q:** How does Arbitration differ from a court trial?

**A:** The main difference is that arbitration is less formal. Arbitration is held in a private office or conference room rather than a public courtroom. Instead of a civil court judge or jury hearing both sides of a case and making a decision, an arbitrator who is an expert in employment disputes decides. Like a court trial, however, both parties may be represented by attorneys if they wish. Also, witnesses will testify under oath and will be questioned and cross-examined.

**Q:** Why is Arbitration a step in the EDR Program?

**A:** For many employers and employees, Arbitration is proving to be a better way to resolve disputes than litigation in the civil courts. Traditional litigation is very expensive for both

parties and often takes years to reach resolution. Disputes through Arbitration can be resolved as quickly as a few months.

**Q:** How is the mediator or arbitrator selected?

**A:** Both sides will be given the opportunity to select a mutually acceptable mediator or arbitrator. If the parties cannot agree, they will be given a list of mediators or arbitrators. Each party will strike any names objected to and number the remaining names in order of preference. The American Arbitration Association, a similar organization, or the EDR Administrator will oversee this process.

**Q:** Will mediators and arbitrators favor companies over the employee?

**A:** No. Mediators and arbitrators selected for the process are experienced judges, attorneys and other trained professionals with an ethical obligation to be objective and fair to all parties.

**Q:** Can an arbitrator award the same kind and amount of damages that a court or jury could?

**A:** Yes. Remedies that can be awarded by an arbitrator are exactly the same as those available in court. The arbitrator must apply the federal or state substantive law that would have been applied in federal or state court (including, but not limited to, the applicable statutes of limitation, the applicable burdens of proof, and the applicable remedies). The arbitrator may not grant remedies that would have been unavailable if the dispute had been heard in federal or state court.

**Q:** If I am terminated and elect to pursue Arbitration, does the arbitrator have the power to reinstate me?

**A:** Yes. The arbitrator has the power to reinstate you. And because the case could be arbitrated much sooner than it would be tried in court, any reinstatement could happen within months, rather than years.

**Q:** What if the cause of my dispute is an on-the-job injury?

**A:** The EDR Program does not cover workers' compensation or unemployment insurance claims. If you need help with a problem regarding your claim for workers' compensation or unemployment insurance benefits, you may contact your Region Human Resources Representative.

**Q:** Will I be able to go to the Equal Employment Opportunity Commission (EEOC) with this program in effect?

**A:** Yes. You are still free to consult the appropriate state Human Rights Commission, the EEOC, or any other government regulatory body regarding your workplace problem. The Company hopes that the EDR Program will resolve all disputes to everyone's satisfaction.

**Q:** If I don't want to go through Mediation or Arbitration, can I go to court?

**A:** No. By choosing to work at the Company or remaining employed with the Company, you have agreed to not go to court for issues covered by the EDR Program. Similarly, the Company has agreed to be bound by the EDR Program. If you attempt to take a dispute to court, the Company will seek to enforce the EDR Program and remove it from the court system.

**54a**

**Notes**

**Notes**

55a

**Notes**

## Employment Dispute Resolution Program
### Acknowledgment

I acknowledge that I have received my copy of the Employee Dispute Resolution (EDR) Program booklet. I understand nothing contained in the EDR Program booklet nor any other communication by the Company management can or should be construed as a guarantee of continued employment. All employment is at-will. This means other the Company or the employee for any reason may terminate the employment relationship at any time. Any statement to the contrary is invalid and should not be relied upon by any prospective or existing employee.

My signature below acknowledges that:

* It is my responsibility to familiarize myself with its contents and have had the opportunity to ask questions about its contents. If I have further questions, I will ask my Supervisor.

* I understand I am bound to use the EDR Program to resolve my employment related disputes as described within the booklet.

Date: _____

Name of Facility (Please Print) _____

Name of Employee (Please Print) _____

Signature of Employee _____

*Employment Dispute Resolution*

56a

# EXHIBIT B
## To Tate Declaration

## RECEIPT AND ACKNOWLEDGEMENT

I certify receipt of the *Code of Conduct*.

I have read this document and understand that I am responsible for knowing and adhering to the principles and standards of the Code.

Signature: _____

Print Name: _Orene T. Nolload_

Location/Facility/Company: _Brooma_

Date: _11/27/13_

**Sign, date, tear out, and submit this copy to management personnel.**

Revised 01/13

15

## Employment Dispute Resolution Program Acknowledgment

I acknowledge that I have received my copy of the Employee Dispute Resolution (EDR) Program booklet. I understand nothing contained in the EDR Program booklet nor any other communication by the Company management can or should be construed as a guarantee of continued employment. All employment is at-will. This means either the Company or the employee for any reason may terminate the employment relationship at any time. Any statement to the contrary is invalid and should not be relied upon by any prospective or existing employee.

My signature below acknowledges that:

- It is my responsibility to familiarize myself with its contents and have had the opportunity to ask questions about its contents. If I have further questions, I will ask my Supervisor.

- I understand I am bound to use the EDR Program to resolve my employment related disputes as described within the booklet.

Date: _11/27/13_

Name of Facility (Please Print) _Brooma_

Name of Employee (Please Print) _Orene T. Nolloard_

Signature of Employee _____

**58a**

# EXHIBIT C
# To Tate Declaration

## Acknowledgement and
## Certification of Accuracy

### Please Read Carefully and Sign Below

I certify that all information in this booklet is complete and accurate to the best of my knowledge and belief. I understand and agree that any omissions or false or inaccurate statements may be justification for termination of employment.

If I accept employment, I agree to abide by the facility policies and procedures, *Code of Conduct*, *Employee Handbook*, and the **EDR Booklet**. I understand/agree that my employment is "at-will" and, therefore, my employment can terminate, with or without cause, at any time at my option or the facility's option. This "at-will" employment relationship may not be modified by any oral or implied agreement.

I understand and agree that I must meet all established physical standards to perform the essential functions of my job. I understand that during employment I might be subjected to physical examinations and/or physical ability test to demonstrate that I can perform the essential functions of my job.

_Irene T. Novasad_  _Irene T. Novasad_  _11/27/13_

Name                         Signature                      Date

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IRENE NOVOSAD                          :
4916 Knorr Street                      :
Philadelphia, PA 19135                 :       CIVIL ACTION
   and                  :       No. 15-6252
KATHY MORRIS                           :
282 Cassatt Road, Apt. 3               :
Berwyn, PA 19312                       :
          :
   Plaintiffs,           :
  v.                          :
          :
THI OF PENNSYLVANIA AT                 :
BROOMALL, LLC                          :
d/b/a BROOMALL REHABILITATION          :
AND NURSING CENTER                     :       **JURY TRIAL DEMANDED**
50 N. Malin Road                       :
Broomall, PA 19008                     :
   and                   :
BROOMALL OPERATING                     :
COMPANY, LP                            :       **COLLECTIVE ACTION ON BEHALF**
50 N. Malin Road                       :       **OF PLAINTIFFS AND ALL SIMILARLY**
Broomall, PA 19008                     :       **SITUATED PERSONS**
   and                   :
SAVASENIORCARE                         :
ADMINISTRATIVE SERVICES, LLC           :
1 Ravinia Dr., Suite 1500              :
Atlanta, GA, 30346                     :
          :
   Defendants.           :
          :

## FIRST AMENDED COLLECTIVE / CLASS ACTION COMPLAINT

Plaintiffs, by and through their undersigned counsel, hereby aver as follows:

### I.  INTRODUCTION

1.  This action has been initiated by Irene Novosad and Kathy Morris (hereinafter referred to as "Plaintiffs," unless indicated otherwise) to redress violations by Defendants of the Fair Labor Standards Act ("FLSA" – 29 U.S.C. 201 *et. seq.*) and applicable state law(s). Plaintiffs assert that they were not properly paid overtime compensation during improperly

deducted meal breaks. Plaintiffs bring this action along with all employees/former employees who are similarly situated to them and who also worked in non-supervisory positions for any of Defendants' locations in the last three (3) years.

## II.    JURISDICTION AND VENUE

2.      This action is initiated pursuant to a federal law. The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative facts.

3.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b) (1), venue is properly laid in this district because Defendants are residents of this district.

## III.    THE PARTIES

5.      The foregoing paragraphs are incorporated in their entirety as if set forth in full.

6.      Plaintiffs are adult individuals, with addresses as set forth in the caption.

7.      Defendant THI of Pennsylvania at Broomall, LLC d/b/a Broomall Rehabilitation and Nursing Center ("Defendant THI") is a health care provider located at the above-captioned address, which is owned and/or operated by and/or was succeeded in interest by Broomall

Operating Company, LP ("Defendant Broomall") and is the location at which Plaintiffs physically worked.

8.      Defendant Broomall Operating Company, LP ("Defendant Operating") is upon information and belief is a subsidiary of Defendant THI that primarily operates the former business of Defendant THI at 50 N. Malin Rd.[1]

9.      Defendant SavaSeniorCare Administrative Services, LLC ("Defendant Sava") is a provider of various administrative and personnel services to numerous entities throughout the United States, including at the address for Defendant Operating as set forth in the caption. These services include, but are not limited to, assistance in functions related to payroll, human resources, and the hiring and training of employees.

10.      Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single entity and/or joint employer for purposes of the instant action.

11.      Separate and apartment from their functions as joint employers, Defendant Sava and Defendant Operating are successors of Defendant THI as they acquired the business from Defendant THI and carry on the business. It is also unclear at this time if Defendant THI is still monetarily viable.

12.      At all times relevant hereto, Defendants acted by and through its agents, servants and employees, each of whom acted at all relevant times in the course and scope of their employment with and for Defendants.

---

[1] Defendant Sava, Defendant Operating, and Defendant THI are hereinafter collectively referred to as "Defendants" unless indicated otherwise.

## IV.    FACTUAL BACKGROUND

13.    The foregoing paragraphs are incorporated in their entirety as if set forth in full.

14.    Plaintiffs have worked for Defendants for varying periods of time, and more specifically:

    a.    Plaintiff Novosad was employed by Defendants from on or about August 22, 2011 through in or about September 2015.

    b.    Plaintiff Morris was employed by Defendants from in or about November 2013 through in or about May 2015.

15.    Plaintiffs were both employed through Defendants as Charge Nurses.

    a.    More specifically, Plaintiff Novosad is a Licensed Practical Nurse and Plaintiff Morris is a Registered Nurse.

16.    Plaintiffs' job duties with Defendants included, but were not limited to, monitoring resident care, performing patient assessments and explaining treatment protocols and procedures to patients.

17.    Plaintiffs regularly worked with Defendant in excess of forty (40) hours per week.

18.    Plaintiffs were allotted a ½ hour break per shift, which Defendants referred to as a "lunch" break regardless of the time of day.

19.    Defendants regularly scheduled Plaintiffs to work eight (8) hour shifts as the only Charge Nurses on duty and/or on particular assignments.

20.    Plaintiffs rarely took the ½ hour "lunch" break because of their work-related responsibilities.

21.    Defendants' management level employees encouraged Plaintiffs and other similarly situated employees to clock-out for "lunch" even if they did not use the allotted time to take a break.

22.     Defendants even automatically deducted the ½ hour breaks from Plaintiffs' (and other similarly situated employees') pay even if they did not actually take the breaks.

23.     The putative class of collective Plaintiffs includes all non-supervisory employees at any of Defendants' locations who worked through "lunch breaks" for which they were not compensated.

**First Cause of Action**
**Violation of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Overtime Compensation)**
**Plaintiff Novosad and Collective/Class against All Defendants**
**Plaintiff Morris and Collective/Class against Defendants Operating and Sava**

24.     The forgoing paragraphs are incorporated herein in their entirety as if set forth in full.

25.     At all times relevant hereto, Defendants were employers within the meaning of the FLSA. *See* 29 U.S.C. § 203.

26.     At all times relevant hereto, Plaintiffs were employed with Defendants as employees within the meaning of the FLSA. *See* 29 U.S.C. § 203.

27.     Pursuant to the FLSA, an employer must pay an employee overtime compensation for each hour worked beyond forty (40) hours per week. *See* 29 U.S.C. § 207(a)(1).

28.     Defendants willfully violated the FLSA by failing to pay Plaintiffs as well as other non-management employees for working through their "lunch" breaks, by knowingly failing to do so, by failing to properly investigate their complaints, and by failing to compensate them for their unpaid overtime prior to, during and following their complaints.

**Second Cause of Action**
**Violation of the Pennsylvania Minimum Wage Act ("PMWA")**
**(Failure to Pay Overtime Compensation)**
**Plaintiff Novosad and Collective/Class against All Defendants**
**Plaintiff Morris and Collective/Class against Defendants Operating and Sava**

29.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30.     Defendants' failure to pay wages and overtime in the aforesaid manners constitutes a violation of the PMWA.

**Third Cause of Action**
**Violation of the Pennsylvania Wage Payment Collection Law ("WPCL")**
**(43 P.S. 260.3(a)-(b))**
**Plaintiff Novosad and Collective/Class against All Defendants**
**Plaintiff Morris and Collective/Class against Defendants Operating and Sava**

31.     The forgoing paragraphs are incorporated herein in their entirety as if set forth in full.

32.     Plaintiffs had an agreement with Defendants whereby Defendants agreed to compensate Plaintiffs for services performed during her employment.

33.     Other non-management employees are similarly situated to Plaintiffs in that they also had agreements with Defendants wherein Defendants agreed to compensate them for work performed.

34.     Defendants failed to compensate Plaintiffs and/or other similarly situated non-management employees for all wages owed to them during their employment with Defendants.

35.     Plaintiffs and other similarly situated non-management employees performed the agreed-upon services for Defendants, and Defendants failed to properly compensate them for the services rendered as specified by the parties' employment agreements, including but not limited to paying Plaintiffs for all hours worked pre-shift, post-shift, during breaks, and on weekends.

**WHEREFORE,** Plaintiffs pray that this Court enter an order providing that:

Defendants are to compensate Plaintiffs, reimburse Plaintiffs, and make Plaintiffs whole for any and all pay and benefits Plaintiffs would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiffs should be accorded those benefits illegally withheld from the date she first suffered discrimination at the hands of Defendants until the date of verdict;

A. Plaintiffs are to be awarded liquidated damages and/or punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct, and to deter Defendants or other employers from engaging in such misconduct in the future;

B. Plaintiffs are to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

C. Any verdicts in favor of Plaintiffs are to be molded by the Court to maximize the financial recovery available to Plaintiffs in light of the caps on certain damages set forth in applicable federal law;

D. Plaintiffs' claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiffs have also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Center
Suite 128
Bensalem, PA 19020
(215) 639-0801

Date: March 3, 2016

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IRENE NOVOSAD 4916 Knorr Street Philadelphia, PA 19135     and KATHY MORRIS 282 Cassatt Road, Apt. 3 Berwyn, PA 19312 <br><br>     Plaintiffs,    v. <br><br> BROOMALL OPERATING COMPANY LP 50 N. Malin Road Broomall, PA 19008     and SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC 1 Ravinia Dr., Suite 1500 Atlanta, GA, 30346 <br><br>     Defendants. | CIVIL ACTION No. 2:15-cv-06252-JS |

**SWORN DECLARATION OF KATHRINE M. TATE**

1.    My name is Kathrine M. Tate. I am over the age of eighteen (18) and am competent to give this sworn declaration. I have personal knowledge of all matters set forth herein. This declaration is given for use in support of Defendants' Motion to Compel Individual Arbitration and Stay Proceedings [Doc. No. 18], and for any other purpose permitted by law.

2.    I am employed by Defendant SavaSeniorCare Administrative Services, LLC ("Sava Administrative Services"). Pursuant to a Back Office Service Agreement, Sava Administrative Services has provided various support services, including employment-related support services, to Defendant Broomall Operating Company LP ("Broomall"), the entity that employed Plaintiff Kathryn M. Morris ("Plaintiff"). In connection with my employment with

8644475

1

**69a**

Sava Administrative Services, I have become familiar with the contents of the personnel file maintained at the Broomall facility for Plaintiff.

3. Plaintiff was presented with certain form documents by Broomall, including an Employee Dispute Resolution Book (the "EDR Booklet"), a true and correct copy of which is attached as Exhibit A hereto. This form EDR Booklet was prepared by Sava Administrative Services and is made available for use by various affiliated operating companies, like Broomall, who employ the individuals working at each facility.

4. In connection with her employment with Broomall, Plaintiff accepted the terms of the EDR Booklet by signing the "Employment Dispute Resolution Program Acknowledgement" form (the "Acknowledgement") included as the last page of the EDR Booklet. A true and correct copy of the Acknowledgement signed by Plaintiff and maintained in the ordinary course of business in her personnel file is attached as Exhibit B hereto.

5. Plaintiff also signed another "Acknowledgement and Certification of Accuracy" form stating that upon accepting employment with Broomall she agreed "to abide by the facility policies and procedures, *Code of Conduct*, *Employee Handbook*, and the **EDR Booklet**." (Emphasis in original.) A true and correct copy of this second acknowledgement form signed by Plaintiff and maintained in the ordinary course of business in her personnel file is attached as Exhibit C hereto.

5. Plaintiff also signed an "Employment Dispute Resolution Program Agreement" stating that Plaintiff understood and agreed (i) "to resolve all claims, controversies or disputes relating to [her] application for employment, [her] employment and/or termination of employment exclusively through the Employment Dispute Resolution Program[;]" (ii) "that the last step of the EDR Program is final and binding arbitration by a neutral arbitrator[;]" (iii) "that

8644475

2

**70a**

this mutual agreement to use the EDR Program and to arbitrate claims means that the Facility and [Plaintiff] are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial[;]" and (iv) "that if [Plaintiff] file[s] a lawsuit regarding a dispute arising out of or relating to [Plaintiff's] application for employment, [Plaintiff's] employment or the termination of [Plaintiff's] employment, the Facility may use this Agreement in support of its request to the court to dismiss the lawsuit and require [Plaintiff] to use the EDR Program instead." A true and correct copy of this agreement signed by Plaintiff and maintained in the ordinary course of business in her personnel file is attached as Exhibit D hereto.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 16, 2016.

Kathrine M. Tate

# EXHIBIT A
# To Tate Declaration

# Employment Dispute Resolution Book

One Ravinia Drive
Suite 1500
Atlanta, GA 30346

2Y999 (07/08)

## Introduction

We are committed to building positive employee relations, encouraging open communication and respecting the rights and dignity of others. Only by working well together can we make a difference in the lives of those who depend on us to provide the highest quality healthcare.

But sometimes, even with our best efforts, problems arise in work relationships. These problems can escalate into larger disputes if no options for resolving them are available. Our **Employment Dispute Resolution (EDR) Program** provides a process and the resources for finding solutions to employee problems. Because we care about our employees and believe it is important to treat employees fairly, the Program incorporates four steps: *(1) Open Door, (2) Facilitation, (3) Mediation and (4) Arbitration.* If the parties cannot mutually resolve the dispute in the first three steps, the Company has agreed to submit the dispute to an outside, impartial arbitrator and to accept the decision of the arbitrator as final and binding.

Not only does the EDR Program ensure a fair resolution to disputes, but it is often a much faster and less expensive process. Instead of possibly waiting for years to resolve a dispute in court, under the EDR Program, disputes may be resolved in weeks or months. In addition, using the court system could be much more expensive than the EDR Program.

Your decision to accept employment or to continue employment with the Company constitutes your agreement to be bound by the EDR Program. Likewise, the Company agrees to be bound by the EDR Program. This mutual agreement to arbitrate claims means that both you and the Company are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial on issues covered by the EDR Program. However, no remedies that otherwise would be available to you or the company in a court of law will be forfeited by virtue of the agreement to use and be bound by the EDR Program. This Program covers only claims by individuals and does not cover class or collective actions.

This booklet presents the basic procedures that govern the EDR Program and the four program steps for addressing employee issues and concerns. Read it carefully. It will help you understand your rights and responsibilities in the Program. Please note the Program has detailed rules specific only to the Mediation and Arbitration steps that are not contained in this booklet, but are available upon request. If you have questions, you may consult your Region Human Resources representative or the EDR Program Administrator.

*All references to the "Company" in this booklet refer to subsidiaries that employ the individuals working there.*

*Employment Dispute Resolution*                                        Page 1 of 15

74a

# Employment Dispute Resolution Program

☐ Provides four steps for resolving work-related disputes.

☐ Creates easier access to different levels of management.

☐ Keeps the lines of communication open.

☐ Facilitates good working relationships.

☐ Helps create an environment that encourages problem solving.

☐ Assures the fair resolution of problems in a timely manner.

☐ Promotes confidentiality.

## Effective Date, Duration and Impact of the EDR Program Upon Your Employment

The EDR Program is the process for resolving most workplace disputes between you and the Company, including, but not limited to, disputes concerning legally protected rights such as freedom from discrimination, retaliation or harassment. It remains effective for the entire length of your employment and continues in effect should your employment end. All employees must use the EDR Program as the sole means of dispute resolution.

The EDR Program does not establish any of the terms of your employment other than to act as a mechanism for resolving employment disputes. Therefore, nothing in the EDR Program or in these procedures creates a contract of employment, express or implied, for any period of time, nor does it alter the at-will status of your employment with the Company.

## Employees Covered by the EDR Program

The EDR Program covers all management and non-union employees of the Company. The EDR Program does not apply to employees who are covered by a collective bargaining agreement.

## Covered Disputes

Disputes covered under the EDR Program pertain to claims such as discipline, discrimination, fair treatment, harassment, termination and other legally protected rights.

Disputes not covered under the EDR Program relate to workers' compensation, unemployment benefits, health, welfare and retirement benefits and claims by the Company for injunctive relief to protect trade secrets and confidential information.

You retain the right to pursue employment disputes before federal or state administrative agencies. Nothing in the EDR Program prevents you from filing a claim with a federal or state administrative agency or from cooperating in a federal or state agency investigation.

## Law Governing the EDR Program

The substantive law that governs the employment disputes that you take to mediation or to arbitration under the EDR Program is the same state and federal law that would have applied had your claims been heard in state or federal court.

The application, interpretation and enforcement of the EDR Program is covered by the Federal Arbitration Act. If any court should find that the Federal Arbitration Act does not apply to the arbitration of your dispute with the Company, then the application, interpretation and enforcement of the EDR Program shall be covered by the law of the state in which you work.

## Confidentiality

All proceedings and all documents prepared in connection with any of the EDR Program steps are confidential. Unless required by law, no EDR Program proceedings or documents shall be disclosed to any person other than to the participants in those proceedings, representing counsel, witnesses, the mediator, the arbitrator, and, if applicable, the court and its staff.

## Administration of EDR

To ensure the success of the EDR Program and promote employee awareness and understanding of how it works, an individual acts as the EDR Program Administrator. He or she oversees and manages the EDR Program to ensure it is properly administered and will answer questions, process requests and provide counseling, as necessary.

# Employment Dispute Resolution Program Consists of Four Steps:



**STEP 1 — Open Door**
All levels of management are available to hear your concerns.

*Problem Mutually Solved*

**STEP 2 — Facilitation**
Your Region Human Resources Representative is your Facilitator working toward a mutual solution.

*Problem Mutually Solved*

**STEP 3 — Mediation**
A neutral third party assists in reaching resolution.

*Problem Mutually Solved*

**STEP 4 — Arbitration**
An impartial, outside party hears the issues and makes a decision.

*Resolution*

## Step One: Open Door

**STEP 1 — Open Door**
All levels of management are available to hear your concerns.

PROBLEM MUTUALLY RESOLVED

MOVE TO STEP 2 FACILITATION

Open Door is an informal way of resolving problems early, preserving working relationships and promoting a productive work environment for everyone. Under the Open Door Step, you are encouraged to take your concerns first to your supervisor. Trying to resolve problems at work with the person to whom you report is usually the quickest and most direct way to find solutions. Because your supervisor is close to your situation, he or she may be in a position to offer a different perspective or some new facts that may be helpful to you. However, if circumstances exist that cause you to be uncomfortable going to your direct report, you may bring your concerns to any supervisor or manager you choose. It is important to know that the Company will not retaliate against any employee in any way for using the Open Door.

You may raise any work-related matter through the Open Door. You may voice your concerns verbally or if you put them in writing. However, you may not attempt to resolve your dispute through any of the other EDR Program steps if you have not attempted to resolve your dispute first by using the Open Door. Even though you are not bound by the outcome of the Open Door, it is a required first step of the program.

The Open Door Step encourages feedback to all levels of management; however, as a general rule, the process should progress as follows:

- Discuss your problem with your immediate supervisor.
- If your problem is not resolved or handled to your satisfaction, you may take your concerns to the next level of management. Do this as promptly as possible to ensure a timely resolution to your problem.
- At the facility level, all facility problems, not directly involving the Administrator, should be reviewed with your Administrator before approaching anyone at the regional level. If you have reviewed your problem with your Administrator and still feel the problem needs further review, you may take your dispute to the Regional Vice President in charge of Operations for your Region. He or she will review your problem and respond to you.

The Open Door gives you the ability to express your concerns and seek a solution that is mutually acceptable to you and the Company. If you find you are unable to find a satisfactory solution, you may move to Step Two.

Step Two: Facilitation



Ideally, everyone would like disputes to be resolved in Step One. However, in some cases, other action may be necessary.

If you feel that the Open Door has not resolved your concern, the next step is Facilitation. In Facilitation, you contact your Region Human Resources Representative. He or she will act as the key facilitator in this step of the EDR Program. In this role he or she will:

☐ Ensure all reasonable avenues of the Open Door process have been explored.
☐ Investigate all aspects of the dispute and help both sides consider the best way to settle the issue.
☐ Keep the lines of communication open.

Your Region Human Resources Representative has been trained to work with all parties to reach a mutually acceptable resolution. However, in some cases, it will not be possible to bring the parties to a common agreement. In this case:

☐ If your dispute does not involve a legally protected right, your Region Human Resources Representative will communicate the final decision regarding the outcome at the end of Step Two.
☐ If your problem involves a legally protected right, you may proceed to Step Three of the EDR Program. Your Region Human Resources Representative will refer your case to the EDR Administrator.

Step Three: Mediation



Identifying issues.
☐ Exploring any and all avenues that may lead to resolution.
☐ Attempting to find solutions that may be satisfactory to both parties.
☐ Creating an atmosphere that encourages communication and mutual agreement.

To begin mediation, your Region Human Resources Representative will refer your case to the EDR Administrator. Forms will be sent to you and the process will begin upon receipt of the completed documents. Participation in mediation includes a $50.00 initiation fee. The initiation fee will be used to pay a portion of the administrative fees charged by the organization or individual conducting the mediation. The Company will pay the remainder of the fees.

In the Mediation process, you have the option of requesting legal representation. If you choose to have legal representation at the Mediation, the Company will also have an attorney present. The Company will not bring an attorney if you do not bring an attorney. When you do seek to have legal representation, the Company may in some circumstances provide assistance in paying some of your legal fees. For information regarding reimbursement of these legal fees, see the Legal Consultation Fees section of this booklet.

The Mediator is confidential. No statements made in the process of trying to resolve your dispute may be used in any later proceeding for any purposes. The Mediation will take place at a location that is convenient and acceptable to you and to the Company.

At the Mediation, the mediator usually begins with a meeting at which both you and the Company representative are present. Each of you will be asked to state your positions so the mediator can get a good understanding of the situation. The mediator may then meet individually with each of you to get clarification and to find common ground for a solution. The mediator may continue meetings with the total group or may make back and forth between you and the Company until the case is settled or until it is determined a resolution cannot be reached. If you and the Company do reach an agreement through the mediator, it will be incorporated and signed by each of you. The specific rules that govern this process are available to you.

You are not bound by the outcome of the Mediation; however, in most cases, it is a required step in the EDR Program. The EDR Program Administrator has the discretion of allowing you in some circumstances to move to Step Four without taking advantage of the Mediation Step.

If you have pursued a resolution for a legally protected right through both Step One and Step Two and still are not satisfied, you may seek a resolution through the more formal process of Mediation. Mediation is a meeting at which an outside, neutral third party, called a mediator, helps you and the Company find a solution that is mutually acceptable. The selection of the mediator is made through the American Arbitration Association, a similar organization or by the EDR Administrator directly with a neutral party. The mediator will be experienced and knowledgeable in the field of employment law and will be impartial and independent. The mediator does not make a determination that either your position or the Company's position is right, or of wrong. Instead, the mediator acts as a "go-between" who works with both sides in an effort to come to a resolution. He or she helps parties reach agreement by:

77a

## Step Four: Arbitration



**STEP 4**

**Arbitration**

An impartial, outside party hears the issues and makes a decision.

**Resolution**

Arbitration is the final step in the EDR Program for disputes involving your legally protected rights. Like Mediation, Arbitration is a process that involves an outside, third party that is completely neutral. Unlike Mediation, your dispute is presented to an arbitrator who makes a judgment and a decision, which is binding on both parties. Although the Arbitration step is somewhat less formal than going to court, the Program has specific rules that govern these rules from the EDR Program Administrator. The Arbitration hearing can take several hours or several days, whatever is necessary to ensure a full and fair development of your case and the Company's case. At that point, the arbitrator will decide who wins and what remedies are appropriate under the law.

If the arbitrator decides in your favor, you can be awarded any remedy you might obtain from a court of law, including back pay, reinstatement, attorneys' fees and punitive damages. The selection of the arbitrator is made through the American Arbitration Association, a similar organization or directly with a neutral party. A hearing date at a neutral location that is satisfactory to both you and the Company is arranged.

If mediation is not successful, your Region Human Resources Representative will request the EDR Administrator to provide you with the required arbitration documents. You begin the arbitration process by returning the completed documents. As in Mediation, a $50.00 initiation fee is required for participation in Arbitration. Your initiation fee pays a portion of the administration costs. The Company pays the remainder of the administration costs as well as the arbitrator's fees and expenses.

As in Mediation, an attorney may represent you. If you seek legal representation, you are responsible for any attorney's fees you incur. You may qualify for assistance from the Company in paying legal fees. For details on this, see the Legal Consultation Fees section in this booklet.

Prior to the Arbitration hearing, documents are exchanged and, in some cases, depositions are taken. The arbitrator runs the proceedings that are held privately in an informal setting. The arbitrator is the sole decision-maker. There is no jury. Evidence is presented to the arbitrator, testimony is given and witnesses are questioned and cross-examined by both you and the Company or by the attorneys representing you and the Company. It is important that you assert at the time of the arbitration any and all claims that you believe you may have against the Company. At the end of the Arbitration, the arbitrator issues a written decision that is binding on both you and the Company.

## Legal Consultation Fees

When your dispute involves a legally protected right such as discrimination, harassment or wrongful discharge, you may apply for reimbursement for legal fees you incur. The legal consultation is with an attorney of your choice; however, you must get approval from the EDR Program Administrator prior to consulting counsel.

Reimbursements for legal consultations are subject to a deductible, a co-payment and an annual limit. The following requirements apply to all approved consultations:

☐ You pay a $50.00 deductible.
☐ After the deductible, you pay 20% of the balance of the fee charged for the consultation. The Company pays 80% of the balance.
☐ The maximum benefit paid to you is $2,000. All charges beyond $2,000 are your responsibility.

## Questions and Answers

Q: What do I do if my supervisor ignores the Open Door Step or starts to make things difficult for me after I present my issue?

A: If the first person you approach in the Open Door Step is unresponsive or retaliates against you for using it, go to the next level of management to resolve your problem. You may also contact your Region Human Resources Representative or the EDR Program Administrator for assistance.

Q: How can I be assured the Region Human Resources Representative will really try to help me in resolving my dispute?

A: It is in the best interest of both parties to bring disputes to a speedy, agreeable solution. The Region Human Resources Representatives have received special training to assist them in doing just that. They have the ability to remain neutral and review issues from a standpoint that is independent of your facility.

Q: Both the mediator and the arbitrator are neutral third party experts from outside the Company to help resolve disputes. What is the difference between Mediation and Arbitration?

A: In Mediation, the mediator helps the parties reach a mutually acceptable solution, but does not give a final decision. In Arbitration, the arbitrator, after hearing both sides of the dispute, makes a decision that is binding on all parties. The arbitrator's decision cannot be appealed, except in rare circumstances.

Q: Are there guidelines to make sure the Mediation and Arbitration processes are fair?

A: Employment Dispute Resolution Program Rules govern the mediation and arbitration processes. Contact the EDR Program Administrator if you want a copy of these rules.

Q: Do I have to go through Mediation before proceeding to Arbitration?

A: Usually, it is to the benefit of both parties to attempt to settle between themselves. The EDR Program is designed to keep lines of communication open, allowing you and the Company opportunities to resolve differences. Under some circumstances you may proceed directly to Arbitration if approved by the EDR Program Administrator. Such approval is in the sole discretion of the Program Administrator.

Q: How does Arbitration differ from a court trial?

A: The major difference is that arbitration is less formal. Arbitration is held in a private office or conference room rather than a public courtroom. Instead of a civil court judge or jury hearing both sides of a case and making a decision, an arbitrator who is an expert in employment disputes decides. Like a court trial, however, both parties may be represented if by attorneys if they wish. Also, witnesses will testify under oath and will be questioned and cross-examined.

Q: Why is Arbitration a step in the EDR Program?

A: For many employers and employees, Arbitration is proving to be a better way to resolve disputes than litigation in the civil courts. Traditional litigation is very expensive for both

parties and often takes years to reach resolution. Disputes through Arbitration can be resolved as quickly as a few months.

Q: How is the mediator or arbitrator selected?

A: Both sides will be given the opportunity to select a mutually acceptable mediator or arbitrator. If the parties cannot agree, they will be given a list of mediators or arbitrators. Each party will strike any names objected to and number the remaining names in order of preference. The American Arbitration Association, a similar organization, or the EDR Administrator will oversee this process.

Q: Will mediators and arbitrators favor companies over the employee?

A: No. Mediators and arbitrators selected for the process are experienced judges, attorneys and other trained professionals with an ethical obligation to be objective and fair to all parties.

Q: Can an arbitrator award the same kind and amount of damages that a court or jury could?

A: Yes. Remedies that can be awarded by an arbitrator are exactly the same as those available in court. The arbitrator must apply the federal or state substantive law that would have been applied in federal or state court (including, but not limited to, the applicable statutes of limitation, the applicable burdens of proof, and the applicable remedies). The arbitrator may not grant remedies that would have been unavailable if the dispute had been heard in federal or state court.

Q: If I am terminated and elect to pursue Arbitration, does the arbitrator have the power to reinstate me?

A: Yes. The arbitrator has the power to reinstate you. And because the case could be arbitrated much sooner than it would be tried in court, any reinstatement could happen within months, rather than years.

Q: What if the cause of my dispute is an on-the-job injury?

A: The EDR Program does not cover workers' compensation or unemployment insurance claims. If you need help with a problem regarding your claim for workers' compensation or unemployment insurance benefits, you may contact your Region Human Resources Representative.

Q: Will I be able to go to the Equal Employment Opportunity Commission (EEOC) with this program in effect?

A: Yes. You are still free to consult the appropriate state Human Rights Commission, the EEOC, or any other government regulatory body regarding your workplace problem. The Company hopes that the EDR Program will resolve all disputes to everyone's satisfaction.

Q: If I don't want to go through Mediation or Arbitration, can I go to court?

A: No. By choosing to work at the Company or remaining employed with the Company, you have agreed to not go to court for issues covered by the EDR Program. Similarly, the Company has agreed to be bound by the EDR Program. If you attempt to take a dispute to court, the Company will seek to enforce the EDR Program and remove it from the court system.

**79a**

## Notes

## Notes

**Notes**

## Employment Dispute Resolution Program
### Acknowledgment

I acknowledge that I have received my copy of the Employee Dispute Resolution (EDR) Program booklet. I understand nothing contained in the EDR Program booklet nor any other communication by the Company management can or should be construed as a guarantee of continued employment. All employment is at-will. This means either the Company or the employee for any reason may terminate the employment relationship at any time. Any statement to the contrary is invalid and should not be relied upon by any prospective or existing employee.

My signature below acknowledges that:

- It is my responsibility to familiarize myself with its contents and have had the opportunity to ask questions about its contents. If I have further questions, I will ask my Supervisor.
- I understand I am bound to use the EDR Program to resolve my employment related disputes as described within the booklet.

Date: _____

Name of Facility (Please Print) _____

Name of Employee (Please Print) _____

Signature of Employee _____

81a

# EXHIBIT B
# To Tate Declaration

## Employment Dispute Resolution Program
## Acknowledgment

---

I acknowledge that I have received my copy of the Employee Dispute Resolution (EDR) Program booklet. I understand nothing contained in the EDR Program booklet nor any other communication by the Company management can or should be construed as a guarantee of continued employment. All employment is at-will. This means either the Company or the employee for any reason may terminate the employment relationship at any time. Any statement to the contrary is invalid and should not be relied upon by any prospective or existing employee.

My signature below acknowledges that:
- It is my responsibility to familiarize myself with its contents and have had the opportunity to ask questions about its contents. If I have further questions, I will ask my Supervisor.
- I understand I am bound to use the EDR Program to resolve my employment related disputes as described within the booklet.

Date: 4/28/14

Name of Facility (Please Print) Broomall Rehab &
Nursing

Name of Employee (Please Print) KATHRYN MORRIS, RN
MSNED, CEN

Signature of Employee Kathryn Morris RN
MSNED, CEN

# EXHIBIT C
# To Tate Declaration

## Acknowledgement and
## Certification of Accuracy

### Please Read Carefully and Sign Below

I certify that all information in this application booklet and all information provided in my application via www.savacareers.com is complete and accurate to the best of my knowledge and belief. I understand and agree that any omissions or false or inaccurate statements may be justification for refusal to hire or termination of employment.

I understand and agree that nothing contained in my application or in the hiring process is intended to create an employment contract. If I am offered and accept employment, I agree to abide by the facility policies and procedures, *Code of Conduct*, *Employee Handbook*, and the **EDR Booklet**. I understand/agree that my employment is "at-will" and, therefore, my employment can terminate, with or without cause, at any time at my option or the facility's option. This "at-will" employment relationship may not be modified by any oral or implied agreement.

I understand and agree that I must meet all established physical standards to perform the essential functions of any job for which I am offered employment. I understand that during employment I might be subjected to physical examinations and/or physical ability test to demonstrate that I can perform the essential functions of my job.

I understand and agree that my application documents whether in this booklet or online will remain active for 90 days. If I still want to be considered for a position after the expiration date, it is my responsibility to complete a new and complete application.


*Kathryn Morris*      *Kathryn Morris*      *4/8/14*
Print Name            Signature            Date

# EXHIBIT D
# To Tate Declaration

## Employment Dispute Resolution
## Program Agreement

The Facility is committed to building positive employee relations, encouraging open communication and respecting the rights and dignity of our employees. We recognize, however, that problems may arise in work relationships. The Employment Dispute Resolution (EDR) Program provides a process for resolving employment problems. The EDR Program has four steps: (1) Open Door; (2) Facilitation; (3) Mediation; and (4) Arbitration. The EDR Program ensures a fair resolution to disputes and is often a much faster and less expensive process. No remedies that otherwise would be available to you in a court of law will be forfeited by virtue of the agreement to use and be bound by the EDR Program. If you wish to be considered for employment you must read and sign the following agreement binding you to use the EDR Program to resolve disputes. An EDR Program booklet describing the program in detail is available where you obtained this Application.

I recognize that differences may arise between the Facility and me during my application process or employment. I recognize that it is in our mutual best interests that disputes be resolved in a manner that is fair, private, expeditious, economical, final and less burdensome and adversarial than litigation in court. Therefore, both the Facility and I agree to resolve all claims, controversies or disputes relating to my application for employment, my employment and/or termination of employment exclusively through the Employment Dispute Resolution Program. By way of example only, such claims include claims under federal, state and local statutory, regulatory or common law, such as the Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, claims for public police violations, and claims under the law of contracts and the law or torts.

I understand and agree that the last step of the EDR Program is final and binding arbitration by a neutral arbitrator. I understand and agree that this mutual agreement to use the EDR Program and to arbitrate claims means that the Facility and I are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial. I further understand and agree that if I file a lawsuit regarding a dispute arising out of or relating to my application for employment, my employment or the termination of my employment, the Facility may use this Agreement in support of its request to the court to dismiss the lawsuit and require me to use the EDR Program instead.

I understand that my signature to this Agreement does not guarantee that I will be offered employment. If I am offered employment and I become employed this Agreement does not alter the "at-will" status of my employment.

I understand that the EDR Program affects my legal rights. I also understand that I may obtain a copy of the EDR Program booklet and seek legal advice before signing this Agreement.

I certify that I have read this Agreement, I have had an opportunity to ask questions regarding its content, I understand this Agreement, I believe it to be fair, and I voluntarily enter into this Agreement.

KATHRYN MORRIS
Print Name

*Kathryn Morris*
Signature

4/8/14
Date

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IRENE NOVOSAD<br>4916 Knorr Street<br>Philadelphia, PA 19135<br>and<br>KATHY MORRIS<br>282 Cassatt Road, Apt. 3<br>Berwyn, PA 19312<br><br>Plaintiff,<br>v.<br><br>BROOMALL OPERATING<br>COMPANY LP<br>50 N. Malin Road<br>Broomall, PA 19008<br>and<br>SAVASENIORCARE<br>ADMINISTRATIVE SERVICES, LLC<br>1 Ravinia Dr., Suite 1500<br>Atlanta, GA, 30346<br><br>Defendants. | CIVIL ACTION<br>No. 2:15-cv-06252-JS |

## DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFFS' FIRST AMENDED (PUTATIVE) COLLECTIVE/CLASS ACTION COMPLAINT

Defendants Broomall Operating Company LP ("Broomall") and SavaSeniorCare Administrative Services, LLC ("Sava Administrative Services" and collectively with Broomall, "Defendants"), by and through their undersigned counsel, subject to the First Defense below, hereby file their Answer and Defenses to the putative First Amended Collective/Class Action

8655850

1

Complaint (the "Amended Complaint") filed by Irene Novosad and Kathy Morris ("Plaintiffs"), showing the Court as follows:[1]

## FIRST DEFENSE

Plaintiffs' individual claims are subject to mandatory arbitration for the reasons set forth in Defendants' Motion to Compel Individual Arbitration and Stay Proceedings [Doc. No. 18]. Defendant Sava Administrative Services hereby joins that Motion initially filed by Broomall before Sava Administrative Services was a party to this proceeding. As the Third Circuit Court of Appeals has held that a motion to compel arbitration is the equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), *see Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597-98 (3d Cir. 2004), Defendants are filing their answer out of an abundance of caution and without waiving their contention that this Court does not have the power to resolve any of Plaintiffs' claims.

## SECOND DEFENSE

Plaintiffs' claims, individually and on behalf of any member of the putative class, are barred, in whole or in part, by the failure to exhaust administrative and/or contractual remedies.

## THIRD DEFENSE

Plaintiffs' claims against Sava Administrative Services, individually and on behalf of any member of the putative class, are barred, in whole or in part, because Sava Administrative

---

[1] Since the filing of the Amended Complaint on March 2, 2016 [Doc. No. 28], this Court entered an Order dismissing with prejudice Defendant THI of Pennsylvania at Broomall, LLC d/b/a Broomall Rehabilitation and Nursing Center. [Doc. No. 32]. Accordingly, Defendants' Answer to the Amended Complaint does not specifically respond to the allegations that relate solely to THI of Pennsylvania at Broomall, LLC, but nevertheless relies on any and all defenses asserted herein that may be based, in whole or in part, on the fact that Broomall did not take over operations of the Facility at issue until January 1, 2014.

Services never employed Plaintiffs or any member of the putative class, and took no adverse action relative to Plaintiffs or any other member of the putative class.

### FOURTH DEFENSE

Plaintiffs' claims, individually and on behalf of any member of the putative class, fail, in whole or in part, because Defendants acted in good faith and without willfulness, malice, or intent to injure.

### FIFTH DEFENSE

Plaintiffs' claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent Defendants had any absolute and/or qualified privilege.

### SIXTH DEFENSE

Plaintiffs' claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent that the alleged harm suffered by Plaintiffs or any members of the putative class was not caused by any act or omission of Defendants.

### SEVENTH DEFENSE

Plaintiffs' claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent that any damages incurred by Plaintiffs or any members of the putative class were caused by their own acts or omissions, or the acts or omissions of third parties other than Defendants. Furthermore, such claims may be subject to dismissal, in whole or in part, based on the after-acquired evidence doctrine.

## EIGHTH DEFENSE

The damages Plaintiffs seek, for themselves and on behalf of the putative class, would be disproportionate to the harm alleged or suffered by Plaintiffs or any members of the putative class, would be excessive, and would violate Defendants' constitutional rights.

## NINTH DEFENSE

The damages Plaintiffs seek, for themselves and on behalf of the putative class, must be set off against any settlement or other recoveries by Plaintiffs or any member of the putative class.

## TENTH DEFENSE

Plaintiffs' claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent the claims are barred by waiver, estoppel, judicial estoppel, laches, and/or unclean hands. Furthermore, as to members of the putative class only, such claims may be subject to dismissal on the grounds of accord and satisfaction and release.

## ELEVENTH DEFENSE

Plaintiffs' claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent the claims are barred by the applicable statute of limitations.

## TWELFTH DEFENSE

Plaintiffs' claims, individually and on behalf of any member of the putative class, are barred, in whole or in part, by the failure to mitigate alleged damages.

8655850

4

### THIRTEENTH DEFENSE

Defendants did not willfully violate the Fair Labor Standards Act ("FLSA") or any other legal requirement relative to Plaintiffs or any member of the putative class.

### FOURTEENTH DEFENSE

While Defendants expressly deny that they acted in any unlawful manner, any act or omission giving rise to this action was non-willful, in good faith, and based on reasonable grounds for believing that the act or omission did not violate the FLSA.

### FIFTENTH DEFENSE

Plaintiffs' claims and those of members of the putative class are barred, in whole or in part, by their status as exempt employees under the FLSA.

### SIXTEENTH DEFENSE

Defendants acted, at all times relevant to the Amended Complaint, in compliance with the FLSA and are entitled to every defense afforded by the FLSA.

### SEVENTEENTH DEFENSE

Plaintiffs' claims, individually and on behalf of any member of the putative class, are subject to dismissal, in whole or in part, to the extent Plaintiffs and/or members of the putative class did not comply with requirements of the FLSA and/or the policies promulgated by Broomall to ensure that Plaintiffs and/or members of the putative class were paid for all time worked.

### EIGHTEENTH DEFENSE

Plaintiffs' claims and those of members of the putative class are barred, in whole or in part, because the requirements for a collective and/or class action cannot be satisfied and the putative class is not certifiable.

8655850

5

### NINETEENTH DEFENSE

This case is not appropriate for class certification to the extent Plaintiffs fail to demonstrate that the putative class is so numerous that joinder of all members would be impracticable.

### TWENTIETH DEFENSE

This case is not appropriate for class certification to the extent Plaintiffs fail to demonstrate that there are questions of law or fact common to the putative class.

### TWENTY-FIRST DEFENSE

This case is not appropriate for class certification to the extent Plaintiffs fail to demonstrate that their claims or defenses are typical of the claims or defenses of the putative class.

### TWENTY-SECOND DEFENSE

This case is not appropriate for class certification to the extent Plaintiffs fail to demonstrate that they will fairly and adequately protect the interests of the putative class.

### TWENTY-THIRD DEFENSE

This case is not appropriate for class certification to the extent Plaintiffs fail to demonstrate that prosecuting separate actions by individual putative class members would create a risk of inconsistent or varying adjudications.

### TWENTY-FOURTH DEFENSE

This case is not appropriate for class certification to the extent Plaintiffs fail to demonstrate that questions of law or fact common to putative class members predominate over any questions affecting only individual members.

### TWENTY-FIFTH DEFENSE

This case is not appropriate for class certification to the extent Plaintiffs fail to demonstrate that a class or collective action is superior to other available methods for fairly and efficiently adjudicating the controversies.

### TWENTY-SIXTH DEFENSE

Plaintiffs' claims are subject to dismissal, in whole or in part, to the extent the claims made in the Amended Complaint on behalf of Plaintiffs and/or members of the putative class are barred by *res judicata* and/or collateral estoppel or the failure to schedule such claims as assets in prior proceedings under Title 11 of the United States Code.

### TWENTY-SEVENTH DEFENSE

Plaintiffs' claims on behalf of any member of the putative class are subject to dismissal, in whole or in part, to the extent that any member of the putative class did not incur a cognizable injury, did not incur any damages, or otherwise would lack standing.

### TWENTY-EIGHTH DEFENSE

Plaintiffs' claims and those of members of the putative class are subject to dismissal, in whole or in part, to the extent that their damages are *de minimis* under the FLSA.

### TWENTY-NINTH DEFENSE

This case is not appropriate for class certification to the extent Plaintiffs and/or the putative class members fail to demonstrate that they are similarly situated. The potential claims of the putative class members reflect variability.

### THIRTIETH DEFENSE

This case is not appropriate for class certification to the extent Plaintiffs and/or the putative class members fail to establish meaningful identifiable facts or a legal nexus that bind the claims asserted in the Amended Complaint.

### THIRTY-FIRST DEFENSE

This case is not appropriate for class certification to the extent Plaintiffs and/or the putative class members fail to establish that they were harmed and/or damaged by a common policy, plan, or uniform practice that violates the law.

### THIRTY-SECOND DEFENSE

Defendants reserve the right to assert any and all additional defenses as may be determined during the course of discovery.

Subject to and without waiving any of the Defenses set forth above, Defendants respond to the individually numbered paragraphs of the Amended Complaint as follows:

1. Defendants admit that Plaintiffs purport to state causes of action for alleged violations of the FLSA and other Pennsylvania statutory authorities. Defendants further admit that Plaintiffs seek to bring this action on behalf of others in the form of a collective and/or class action. Defendants expressly deny that Plaintiffs' claims, individually or on behalf of any of the putative class members, have any validity, and deny that this action is appropriate for class or collective action treatment. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 1 of the Amended Complaint.

2. Subject to the First Defense stated above, Defendants admit that this Court has jurisdictional authority to consider their motion to compel arbitration and retain jurisdiction during the pendency of the arbitration for certain limited purposes, such as resolving disputes

8655850

8

**95a**

relating to arbitrator selection, compelling witnesses, and ultimately enter any award issued in arbitration. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 2 of the Amended Complaint.

3.     Subject to the First Defense stated above, Defendants admit that this Court has jurisdictional authority to consider their motion to compel arbitration and retain jurisdiction during the pendency of the arbitration for certain limited purposes, such as resolving disputes relating to arbitrator selection, compelling witnesses, and ultimately enter any award issued in arbitration. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 3 of the Amended Complaint.

4.     Subject to the First Defense stated above, Defendants admit that venue lies for this Court to consider their motion to compel arbitration and retain jurisdiction during the pendency of the arbitration for certain limited purposes, such as resolving disputes relating to arbitrator selection, compelling witnesses, and ultimately to enter any award issued in arbitration. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 4 of the Amended Complaint.

5.     Defendants incorporate their responses to Paragraphs 1 through 4 as if fully set forth herein.

6.     Defendants admit only that Plaintiffs are adult individuals. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6 of the Amended Complaint and therefore deny those allegations.

7.     Denied as stated. In further response, Defendants admit only that Plaintiffs previously worked at the facility located at 50 N. Malin Road, Broomall, Pennsylvania 19008 (the "Facility"), and that Broomall took over the operations of the Facility from THI of

Pennsylvania at Broomall d/b/a Broomall Rehabilitation and Nursing Center ("THI") in January 2014. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 7 of the Amended Complaint.

8.   Denied as stated. In further response, Defendants admit only that Broomall took over the operations of the Facility from THI in January 2014. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 8 of the Amended Complaint.

9.   Denied as stated. In further response, Defendants admit only that Sava Administrative Services provides shared services support, including employment-related support services, to affiliated operating companies, including Broomall. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 9 of the Amended Complaint.

10.   Defendants deny the allegations in Paragraph 10 of the Amended Complaint.

11.   Denied as stated. In further response, Defendants admit only that Broomall took over the operations of the Facility in January 2014. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 11 of the Amended Complaint.

12.   Paragraph 12 of the Amended Complaint contains Plaintiffs' statement of a legal conclusion to which Defendants are not required to respond. Additionally, the allegations in Paragraph 12 are too vague and ambiguous to allow for a reasoned response. For each of these reasons, the allegations in Paragraph 12 of the Amended Complaint are denied.

13.   Defendants incorporate their responses to Paragraphs 1 through 12 as if fully set forth herein.

14.   Denied as stated. On information and belief, Defendants admit that Plaintiff Novosad was hired by THI as a Licensed Practical Nurse/Charge Nurse on or about August 22, 2011, and was subsequently hired by Broomall to the same position. Plaintiff Novosad was

8655850

10

terminated by Broomall on or around September 2015. In further response, Defendants admit that Plaintiff Morris was hired by Broomall as a Registered Nurse/Charge Nurse on or about April 28, 2014. On information and belief, Plaintiff Morris was terminated by Broomall on or around August 4, 2015. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 14 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

15.     Denied as stated. In further response, Defendants admit only that Plaintiff Novosad was employed by Broomall as a Licensed Practical Nurse/Charge Nurse, and that Plaintiff Morris was employed by Broomall as a Registered Nurse/Charge Nurse. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 15 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

16.     Denied as stated. On information and belief, Defendants admit that Plaintiffs performed the job functions of monitoring resident care, performing patient assessments and explaining treatment protocols and procedures to patients for Broomall. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 16 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

17.     Defendants deny the allegations in Paragraph 17 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

18.     Denied as stated. In further response, Defendants admit only that, while employed by Broomall, Plaintiffs were allowed and expected to take an uninterrupted half-hour meal break

per eight-hour shift. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 18 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

19.    Denied as stated. In further response, Defendants admit only that Plaintiffs generally worked their assigned shifts for Broomall during their respective employment with Broomall. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 19 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

20.    Defendants deny the allegations in Paragraph 20 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

21.    Defendants deny the allegations in Paragraph 21 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

22.    Defendants deny the allegations in Paragraph 22 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

23.    Defendants admit only that Plaintiffs purport to assert several causes of action on behalf of themselves and others based on Defendants' alleged failure to properly compensate workers who purportedly worked through meal breaks. Defendants expressly deny that Plaintiffs or any member of the putative class are entitled to any of the relief requested, that this case is proper for class or collective treatment, and that Plaintiffs or any of the other putative class

members have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

24.    Defendants incorporate their responses to Paragraphs 1 through 23 as if fully set forth herein.

25.    Paragraph 25 of the Amended Complaint contains Plaintiffs' statement of a legal conclusion to which Defendants are not required to respond. To the extent Paragraph 25 contains any factual allegations, on information and belief, Defendants admit only that Plaintiff Novosad was employed by Broomall from approximately January 1, 2014 to September 22, 2015, and that Plaintiff Morris was employed by Broomall from approximately April 28, 2014 to August 4, 2015. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 25 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

26.    Paragraph 26 of the Amended Complaint contains Plaintiffs' statement of a legal conclusion to which Defendants are not required to respond. To the extent Paragraph 26 contains any factual allegations, on information and belief, Defendants admit only that Plaintiff Novosad was employed by Broomall from approximately January 1, 2014 to September 22, 2015, and that Plaintiff Morris was employed by Broomall from approximately April 28, 2014 to August 4, 2015. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 26 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

27.    Paragraph 27 of the Amended Complaint contains Plaintiffs' statement of a legal conclusion to which Defendants are not required to respond. To the extent Paragraph 27 contains any factual allegations, Defendants deny such factual allegations. Furthermore, Defendants state

that any statutory authority relied on by Plaintiffs in support of their claims or those of the putative class members, including 29 U.S.C. § 207(a)(1), speaks for itself, and Defendants deny any allegations in Paragraph 27 to the extent they vary from the language contained in such authorities.

28.     Defendants deny the allegations in Paragraph 28 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

29.     Defendants incorporate their responses to Paragraphs 1 through 28 as if fully set forth herein.

30.     Defendants deny the allegations in Paragraph 30 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

31.     Defendants incorporate their responses to Paragraphs 1 through 30 as if fully set forth herein.

32.     Paragraph 32 of the Amended Complaint contains Plaintiffs' statement of a legal conclusion to which Defendants are not required to respond. To the extent Paragraph 32 contains any factual allegations, Defendants admit only that Plaintiff Novosad was employed by Broomall from approximately January 1, 2014 to September 22, 2015, and that Plaintiff Morris was employed by Broomall from approximately April 28, 2014 to August 4, 2015. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 32 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services.

33.     Paragraph 33 of the Amended Complaint contains Plaintiffs' statement of a legal conclusion to which Defendants are not required to respond. To the extent Paragraph 33 contains any factual allegations, Defendants admit only that Plaintiff Novosad was employed by Broomall from approximately January 1, 2014 to September 22, 2015, and that Plaintiff Morris was employed by Broomall from approximately April 28, 2014 to August 4, 2015. Except as expressly admitted herein, Defendants deny the allegations in Paragraph 33 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services, and that the alleged putative class is appropriate for class or collective treatment.

34.     Defendants deny the allegations in Paragraph 34 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services, and that the alleged putative class is appropriate for class or collective treatment.

35.     Defendants deny the allegations in Paragraph 35 of the Amended Complaint and expressly deny that Plaintiffs have ever been employed by or performed any job duties on behalf of Sava Administrative Services, and that the alleged putative class is appropriate for class or collective treatment.

36.     In further response, all allegations, headings, and unnumbered paragraphs not expressly admitted herein are denied. Additionally, Defendants deny that Plaintiffs or any member of the putative class are entitled to any of the relief requested in the Prayer for Relief, as set forth in the unnumbered "WHEREFORE" paragraph in the Amended Complaint, including its subparts A through D.

WHEREFORE, Defendants request that Plaintiffs' Amended Complaint be dismissed with prejudice, that judgment be entered in Defendants' favor, that all costs be taxed against Plaintiffs, and that this Court award such other and further relief as the Court deems fair, just, and equitable.

Dated: March 21, 2016

ARNALL GOLDEN GREGORY LLP

Henry M. Perlowski (*admitted pro hac vice*)
Chesley S. McLeod (*admitted pro hac vice*)
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404.873.8684
henry.perlowski@agg.com
chesley.mcleod@agg.com

Respectfully submitted,

CONNOLLY GALLAGHER LLP

*/s/ Ryan P. Newell*
Ryan P. Newell (Pa. Bar ID #207757)
Josiah R. Wolcott (Pa. Bar ID #202222)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
rnewell@connollygallagher.com
jwolcott@connollygallagher.com

*Attorneys for Defendants Broomall Operating
Company LP and SavaSeniorCare
Administrative Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFFS' FIRST AMENDED (PUTATIVE) COLLECTIVE/CLASS ACTION COMPLAINT with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Ari R. Karpf, Esq.
akarpf@karpf-law.com
Tim Seiler, Esq.
tseiler@karpf-law.com
KARPF, KARPF, & CERUTTI, P.C.
3331 Street Road
Two Greenwood Center
Suite 128
Bensalem, PA 19020
*Attorneys for Plaintiff*

*/s/ Ryan P. Newell*
Ryan P. Newell (Pa. Bar ID #207757)
Josiah R. Wolcott (Pa. Bar ID #202222)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
rnewell@connollygallagher.com
jwolcott@connollygallagher.com

8655850

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

```
IRENE NOVOSAD              :    CIVIL ACTION
                          :    15-CV-6252
           Plaintiff      :
     vs.                  :    Philadelphia, Pennsylvania
                          :         March 17, 2016
BROOMALL OPERATING CO.    :
                          :
           Defendant      :    RULE 16 CONFERENCE
```
- - - - - - - - - - - - - - - - - - - - - - - - - - -

- - -

BEFORE THE HONORABLE JUAN R. SANCHEZ
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Plaintiffs:     TIMOTHY S. SEILER, ESQUIRE
                        KARPF KARPF & CERUTTI
                        3331 Street Road, Suite 128
                        Bensalem, Pennsylvania  19020

For the Defendants:     HENRY M. PERLOWSKI, ESQUIRE
                        CHESLEY S. MCLEOD, ESQUIRE
                        ARNALL GOLDEN GREGORY, LLP
                        171 17th Street, N.J. Suite 2100
                        Atlanta, Georgia  30363

                        JOSIAH RODNEY WOLCOTT, ESQUIRE
                        CONNOLLY BOVE LODGE & HUTZ, LLP
                        267 East Main Street
                        Newark, Delaware  19711

- - -

ESR Operator:           Patrick Kelly


TRANSCRIBED BY:    Drummond Transcription Service
                   Haddon Heights, New Jersey  08035

     Proceedings recorded by electronic sound recording,
transcript produced by computer-aided transcription
service.

2

1          (At 10:28 a.m. in Courtroom 11a.)

2          ESR OPERATOR:  All rise, please.  Court is now in

3  session, the Honorable Juan R. Sanchez presiding.

4          THE COURT:  Thank you very much.

5          So, we have Attorney Seiler representing Irene

6  Novosad.

7          MR. SEILER:  Yes, your Honor.

8          THE COURT:  We have Attorney Perlowski --

9          MR. PERLOWSKI:  Yes, your Honor.

10          THE COURT:  -- representing Broomall Operating

11  Company.

12          We also have Attorney Chesley McLeod.

13          MR. McLEOD:  Yes, your Honor.

14          THE COURT:  And Wolcott.

15          MR. WOLCOTT:  Good morning, your Honor.

16          THE COURT:  So, I think this is a Rule 16 conference

17  as well -- or argument -- on the pending motion to compel

18  arbitration.

19          MR. WOLCOTT:  Yes, your Honor.

20          THE COURT:  Are you prepared to present that argument?

21          MR. PERLOWSKI:  Yes, your Honor.

22          THE COURT:  Okay.

23          MR. WOLCOTT:  And, your Honor, Henry -- Mr. Perlowski

24  will be handling the argument.

25          THE COURT:  Okay.

3

1          MR. WOLCOTT:  He's been admitted *pro hac vice*.

2          THE COURT:  Very well.

3          MR. PERLOWSKI:  Shall I proceed, your Honor?

4          THE COURT:  Yes, you should -- please come forward.

5          MR. PERLOWSKI:  Thank you, your Honor.

6          On behalf of -- of Broomall and Sava, now

7   Administrative Services, because there has been some

8   substitution of parties with the First Amended Complaint.

9          We filed a motion to compel arbitration based on the

10  arbitration clause in the EDR booklet, that Ms. Novosad signed

11  as a condition of her employment after -- Broomall is owned by

12  -- it's one of the Sava companies, Sava is the parent.

13          THE COURT:  Right.

14          MR. PERLOWSKI:  And so, after Sava purchased the

15  Broomall facility, it transitioned the employees, had them all

16  sign an EDR booklet, which contains the arbitration clause that

17  is the basis for the motion to compel arbitration.

18          THE COURT:  Right.

19          As -- as to the arbitration clause --

20          MR. PERLOWSKI:  Yes.

21          THE COURT:  -- that is the subject of your motion to

22  compel arbitration, could you tell me, what does the last

23  sentence of the arbitration clause mean:

24          If it does not operate or function in any way as

25          a carve out for class and/or collective actions, claims

**107a**

4

1          to proceed via litigation rather than arbitration?

2          MR. PERLOWSKI:  Sure, your Honor.

3          In the Supreme Court precedent on arbitration in

4   Slott-Neilson, which is a 2010 decision, expressly said that:

5          Silence does not operate to -- you cannot compel --

6          class arbitration if an arbitration clause is silent on

7          the issue.

8          So, in that case, the arbitration clause was more

9   generic, it just said, all disputes would be subject to

10  arbitration, it didn't say anything about class arbitration.

11          THE COURT:  Yes.

12          But what does the last sentence here mean --

13          MR. PERLOWSKI:  Right.

14          THE COURT:  -- program covers only claims by

15  individuals and does not cover --

16          MR. PERLOWSKI:  Right.

17          THE COURT:  -- class or collective action --

18          MR. PERLOWSKI:  So --

19          THE COURT:  -- isn't that a carve out?

20          MR. PERLOWSKI:  It's a -- it's a waiver of class

21  arbitration, which is consistent with the precedent in this

22  circuit in Quillian, in Percoca.  It's consistent with the

23  Italian Colors Supreme Court decision.

24          And what these decisions collectively say is, you as

25  an individual -- and it's -- it's unquestionably clear in the

5

1   arbitration clause -- that any individual disputes that Ms.

2   Novosad or Ms. Morris, who is now a plaintiff to the case as

3   well -- are bringing against the defendants, any employment-

4   related dispute that they bring is subject to arbitration.

5           And the plaintiff, Ms. Novosad specifically has

6   already consented to that, because in a parallel action, so your

7   Honor, may recall from the last telephone conference, Ms.

8   Novosad, initially, filed two lawsuits.  She filed a wrongful

9   termination lawsuit under the Wage and Hour -- under the FLSA,

10  that case was before Judge DuBois.  We filed a motion to compel

11  arbitration in that case and Ms. Novosad did not oppose it.

12          So, Ms. Novosad has consented that individual -- that

13  her disputes out of her employment are subject to the

14  arbitration clause.  She did not challenge the arbitration

15  clause on either procedural or substantive unconscionability

16  ground.  So --

17          THE COURT:  I -- I don't -- so, if I'm reading this

18  last couple -- the last sentence and -- the last two sentences

19  -- where it begins with:

20          However, no remedies that otherwise would be

21      available to you or the company in a court of law will

22      be forfeited by virtue of the agreement to use and be

23      bound by the EDR program.

24          MR. PERLOWSKI:  Hm-hmm.

25          THE COURT:  The EDR program covers only claims by

6

1        individuals and does not cover class or collective actions.

2            Isn't that a carve out for class or collective --

3            MR. PERLOWSKI:  No.

4            THE COURT:  -- actions?

5            MR. PERLOWSKI:  What it is, your Honor --

6            THE COURT:  How can you be saying, it's a waiver when

7        it seems to be a carve out?

8            MR. PERLOWSKI:  It's consistent with the -- it's

9        consistent with the directive of the -- of the <u>Italian Colors</u>

10       and <u>Stott-Neilson & Korrs</u> that say, you need to -- you need to

11       specify what happens with class claims.  This -- this EDR

12       booklet says:

13           Class arbitration is not permissible.

14           In the complaint, the First Amended Complaint that

15       we're -- that we're here before, if you'd look at the prayer for

16       relief, specifically, Ms. Novosad and Ms. Morris are bringing

17       indiv -- are bringing individual claims, they are also seeking

18       to represent an opt-in class.  But they are brining individual

19       claims based on their specific wage law -- or alleged, wage

20       laws.

21           Plaintiff, which are defined as Ms. Novosad and Ms.

22       Morris are to be awarded damages.  Plaintiffs are to be awarded

23       liquidated damages.  Plaintiffs are to be awarded costs and

24       expenses.  They are bringing claims on their own behalf.  They

25       effectively -- Ms. Novosad effectively -- split her individual

7

1  claims into two lawsuits, they are based on the same facts,

2  so --

3          THE COURT:  So, your argument is that, because they

4  have filed individual claims, that those individual claims had

5  to be arbitrated and they cannot be a representative of the

6  class --

7          MR. PERLOWSKI:  That --

8          THE COURT:  -- since they signed that clause?

9          MR. PERLOWSKI:  -- that's correct, your Honor.

10          And that is fully consistent with what the Italian

11  Colors Supreme Court decision in 2013 authorized.

12          The -- in response to a specific challenge to that

13  very concept, the Supreme Court was crystal-clear, that a --

14  that an arbitration clause that requires the arbitration of

15  individual claims, but in a -- but by virtue of that

16  arbitration, means that that individual doesn't pursue class

17  claims in the -- in the lawsuit, not in the arbitration, it's

18  completely consistent with the Federal Arbitration Act.  That

19  there is no loss of remedies for that individual.

20          Ms. Novosad and Ms. Morris can recover the exact same

21  forms of relief on their individual claims as they could before

22  this Court.  They are seeking claims relating to -- this whole

23  lawsuit it --

24          THE COURT:  All right, hold -- hold on.

25          So -- so, I have a couple of questions.

8

1              So, if they undergo arbitration of their individual

2    claims, can they come back as a member of the class?

3              MR. PERLOWSKI:  Well, their individual claims would in

4    effect --

5              THE COURT:  You -- yeah.

6              MR. PERLOWSKI:  -- in effect, be decided.

7              THE COURT:  Okay.

8              But I'm asking the question, if they undergo their

9    claims to arbitration, right and this is -- let's suppose, they

10   lose or let's suppose they don't get what they want.

11             MR. PERLOWSKI:  Okay.

12             THE COURT:  Can they be members of this class?

13             MR. PERLOWSKI:  I wouldn't think so, your Honor,

14   because that would have already been decided in the arbitration,

15   an award would have then been confirmed.

16             THE COURT:  So -- so, what this means is, the -- they

17   could never be a representative of -- of the class --

18             MR. PERLOWSKI:  That's correct.

19             THE COURT:  -- or a member of the class --

20             MR. PERLOWSKI:  That's correct.

21             THE COURT:  -- under the terms of this -- well,

22   arbitration clause?

23             MR. PERLOWSKI:  That -- that's correct.

24             And the Supreme Court in Italian Colors --

25             THE COURT:  But why -- why do you have a carve out?

9

1          MR. PERLOWSKI:  Well, your Honor, we don't view it as

2   a carve out.  We view it as -- it's just -- well, your Honor,

3   here's --

4          THE COURT:  What -- has this been --

5          MR. PERLOWSKI:  -- what I would say --

6          THE COURT:  -- interpreted before -- has any court

7   interpreted this --

8          MR. PERLOWSKI:  I don't --

9          THE COURT:  -- as a carve out or --

10         MR. PERLOWSKI:  No.

11         THE COURT:  -- as a waiver?

12         MR. PERLOWSKI:  No.

13         THE COURT:  So --

14         MR. PERLOWSKI:  Not to my knowledge.

15         THE COURT:  -- so, this language here troubles me,

16  because it seems to be saying, whatever the EDR or arbitration

17  program is that you had with the employer, whatever that is, it

18  does not apply to class or collective actions -- it does not

19  apply to class or collective actions, meaning, class or

20  collective actions are going to be treated different --

21  differently, right?  You're not giving up your right to bring or

22  be a member of the class --

23         MR. PERLOWSKI:  Well --

24         THE COURT:  -- or collective action?

25         MR. PERLOWSKI:  -- well, your Honor, here's what,

10

1   if --

2           THE COURT:  Could you give me one case that has

3   interpreted this language to mean that?

4           MR. PERLOWSKI:  Not this specific language, your

5   Honor, there is --

6           THE COURT:  Has it ever been --

7           MR. PERLOWSKI:  -- there is --

8           THE COURT:  -- challenged before?

9           MR. PERLOWSKI:  -- there isn't one.

10          THE COURT:  Has it been --

11          MR. PERLOWSKI:  There is a -- there is a pending

12  motion to compel arbitration of the same language in a case

13  that's stayed before this Court in a separate matter.

14          THE COURT:  And which -- which one of my colleagues

15  has that?

16          (Discussion held off the record at 10:37 a.m.)

17          THE COURT:  So, it's the same case, that -- okay --

18  it's not this case, right?

19          MR. PERLOWSKI:  It's not this case, it's another case

20  and your Honor, if I -- it escapes me, who the -- who has that

21  case.  I can give you the name of the plaintiff, it's Dolison,

22  D-o-l-i-s-o-n.

23          THE COURT:  All right.

24          MR. PERLOWSKI:  And that case is -- that case has been

25  stayed for --

1        THE COURT:  So --

2        MR. PERLOWSKI:  -- for other reasons.

3        THE COURT:  -- so if I -- if I understand your

4   argument, your argument is that -- that they cannot be members,

5   representative or members of this class at all, because they

6   signed this arbitration clause while they were working with,

7   either, do I understand that, correctly?

8        MR. PERLOWSKI:  That's -- that's correct.

9        THE COURT:  So, why ask me to stay this proceeding and

10  not ask me to dismiss it?

11       MR. PERLOWSKI:  Well, the -- the precedent in the

12  Third Circuit on motions are -- and I believe, it's in <u>Quillian</u>,

13  it's expressly -- it expressly states that stay is a more

14  appropriate action --

15       THE COURT:  Why --

16       MR. PERLOWSKI:  -- than dismissal.

17       THE COURT:  -- why, your position is that they should

18  -- they have -- they can never be a representative and they can

19  never be members of the class, right, they agreed to

20  arbitration.  So, why do I have --

21       MR. PERLOWSKI:   Your Honor --

22       THE COURT:  -- why do I have to stay?

23       MR. PERLOWSKI:  Your --

24       THE COURT:  It seems to me that your argument that

25  this should be stayed, you should be arguing that it should be

1    dismissed, right?

2              MR. PERLOWSKI:  Your Honor, I'm just, literally -- we

3    are referring to Third Circuit precedent in <u>Quillian</u> which says

4    that:

5              A motion to stay, rather than a motion to dismiss is

6         the required course of action when --

7              THE COURT:  Explain --

8              MR. PERLOWSKI:  -- compelling arbitration.

9              THE COURT:  -- but tell me why, why is it the required

10   course of action, when your argument -- if I understand it

11   correctly -- I do not, necessarily agree with you, that that is

12   -- is a waiver --

13             MR. PERLOWSKI:  Well --

14             THE COURT:  -- but --

15             MR. PERLOWSKI:  -- sure.

16             THE COURT:  -- but it looks to me like, it's a carve

17   out.

18             But if I accept your argument, then it makes sense to

19   me that these people could never come back here as a member of a

20   class action or a collective action.  They cannot be a

21   representative, they cannot be a member.  Do I understand you

22   correctly?

23             MR. PERLOWSKI:  That's our -- that is our position,

24   yes, your Honor.

25             THE COURT:  So, isn't it more appropriate then to

1    dismiss it?

2         MR. PERLOWSKI:  We would have no issue with that, your

3    Honor, we just followed the procedure that we believed the Third

4    Circuit dictated.

5         THE COURT:  I -- I want to understand --

6         MR. PERLOWSKI:  I know.

7         THE COURT:  -- why the procedure --

8         MR. PERLOWSKI:  Well, I --

9         THE COURT:  -- if you're so sure that this is -- that

10   they could never be members of --

11        MR. PERLOWSKI:  Well --

12        THE COURT:  -- if they could be members of the class

13   or the collective action, then you're not entitled to a stay and

14   this case -- this case could proceed, right --

15        MR. PERLOWSKI:  Well --

16        THE COURT:  -- simultaneously, right?

17        MR. PERLOWSKI:  I -- their individuals claims, their

18   predicate claims to be rep --

19        THE COURT:  Right.

20        MR. PERLOWSKI:  -- to be a representative, they have

21   to have predicate claims.  Those predicate claims have to be

22   arbitrated first.

23        So, the -- so, the appropriate -- so the stay is to

24   permit the arbitration to go forward, which is, effectively,

25   what Judge DuBois did --

14

1          THE COURT:  Yeah, but I --

2          MR. PERLOWSKI:  -- in the other case.

3          THE COURT:  -- to be honest with you, I don't have to

4   -- I could stay the trial, but I don't have to stay the

5   discovery or anything else, you -- you could go to arbitration.

6          MR. PERLOWSKI:  Well --

7          THE COURT:  If I -- if I -- in other words, if this is

8   a carve out and not a waiver, if I find it is a carve out not a

9   waiver, right.

10         My -- my question to you is, these two things can

11  happen simultaneously, right?

12         MR. PERLOWSKI:  Well, the question would then be, is

13  how could they proceed as adequate representatives given their

14  simultaneously proceeding in another forum.

15         I mean, we literally, could wind up having three

16  separate proceedings with Ms. Novosad going on at once,

17  conceivably.

18         THE COURT:  Hm-hmm.

19         MR. PERLOWSKI:  Because -- and this is the way -- so,

20  let me just step back for a second.

21         You have Ms. Novosad's -- and I'll use her, because

22  Ms. Wright (sic) was just added -- Ms. Novosad's claims are

23  effectively this:

24         There's an automatic deduction, there was a button

25  override, so if you worked through your meal break, you could

1  press a button and override the automatic deduction.  You as an

2  employee, could automatically override it.  And then, there was

3  a complaint procedure after that.

4        So, what Ms. Novosad is saying is that,

5  notwithstanding this button mechanism and not withstanding the

6  complaint procedures, that she was not paid for time worked

7  during the meal breaks.  She then said, she complained about

8  that and was terminated because of it.

9        That's the simple -- that's the -- that's the case in

10  a nutshell.

11        She then files two separate lawsuits, which clearly

12  arise out of the same fact pattern.  She files two lawsuits, a

13  termination case and a collective-action case.  So, she's

14  effective -- which clearly has the possibility of inconsistent

15  results.

16        Her termination case is now in arbitration.  If her

17  individual claims -- her individual claims -- should be

18  compelled to arbitration and the arbitration clause is clear on

19  that point.  And she is bringing claims for individual relief.

20  She just also seeks to represent a collective -- the opt-in

21  class, if one is certified, conditionally.

22        She's clearly doing that, so now, we could, literally,

23  have her termination claims go forward in arbitration, the

24  individual claims go forward in arbitration and her --

25  notwithstanding that those -- her claims may well be disposed of

16

1    entirely in those forums -- go forward with her being a

2    representative for the purpose of class discovery?  It just

3    seems like, that's the exact result that was unintended by --

4    there is no efficiency to that.  You're not streamlining the

5    proceedings.  You're -- you have inconsistent results that could

6    occur in all of those proceedings, candidly.

7         And this is, literally, a product of how these cases

8    were filed, because if -- if you'd just step back and look at

9    the dispute in its essence, as to Mr. Novosad, she's claiming

10   she has wages due and that her termination was wrongful.  Those

11   claims, everybody -- the parties clearly contemplated -- those

12   claims would be subject to arbitration.

13        So, literally, the last sentence, which is the Supreme

14   Court in Stott-Neilson said:

15        You can't be silent on class arbitration, you have

16        to say, what -- if you're silent you can't compel class

17        arbitration.

18        So, a sentence was added, if this sentence wasn't

19   here, which is -- what we would offer is a clarifying sentence

20   to just say:

21        You cannot compel class arbitration.

22        And that's -- that's the clear intent when you read

23   the paragraph as a whole.  If we didn't have that sentence, we

24   wouldn't even be here, all of these claims would be in

25   arbitration.

1      So, we added the clarifying sentence that <u>Stott-</u>

2  <u>Neilson</u> contemplated and could it have been, perhaps, drafted

3  better?  Sure.

4      But the clear intent is to say, individual claims,

5  arbitrate.  You -- you are not -- you are not agreeing to

6  arbitrate class claims.

7      And the Supreme Court says, that's fine and that's

8  what the precedent -- and in the <u>Percoca</u> decision, which is a

9  Judge Schiller decision of this Court, the arbitration clause is

10  -- and it's also a collective action under the Wage and Hour

11  statute -- the clause is, effectively, any -- so, individual --

12      THE COURT:  This is the problem --

13      MR. PERLOWSKI:  -- claims, arbitrate.

14      THE COURT:  -- the -- the problem I have is that you

15  are arguing that this language -- your clarifying language --

16  you argument that this cannot be -- cannot require --

17  interpreting this language -- as not to require the plaintiffs

18  to be forced to arbitrate collective actions and class actions,

19  right?

20      MR. PERLOWSKI:  I'm saying that this is -- the

21  language -- is clear, that the plaintiff cannot be forced --

22  arbitration of class and collective actions claims -- cannot be

23  compelled to arbitration, because arbitration of those kinds of

24  claims is a fundamentally different animal than arbitration of

25  an individual claim.

1          The Supreme Court in _Italian Colors_ elaborated on that

2     in detail about why that's -- it's just a fundamentally-

3     different animal and it makes arbitration something that it

4     wasn't intended to be, that's what this clause does, it says:

5          Do not -- we're not compelling arbitration of class

6       or collective claims.

7          THE COURT:  Again, this clause has never been

8     interpreted as a carve out or the waiver of --

9          MR. PERLOWSKI:  Correct.

10          THE COURT:  -- as you claim?

11          MR. PERLOWSKI:  I believe so, that -- I'm -- it is --

12    we are not aware --

13          MR. MCLEOD:  We are not aware.

14          MR. PERLOWSKI:  -- of any, your Honor.

15          THE COURT:  Okay.

16          To me it looks like a carve out.  In other words

17    saying, only individual claims can be arbitrated, not collective

18    actions or class actions.

19          MR. PERLOWSKI:  So, what does that -- what then,

20    happens with Ms. Novosad's individual claims?  That -- that's --

21    to me, then is the question, because she is clearly seeking

22    individual relief, if you'd look at the prayer for relief, it is

23    all about --

24          THE COURT:  Go ahead.

25          MR. PERLOWSKI:  -- plaintiffs -- plaintiffs -- and the

1    plaintiffs are defined as Ms. Novosad and Ms. -- and Ms. Morris.

2         She is clearly bringing claims seeking individual

3    relief.  She is bringing the lawsuit to get money.  What those

4    claims -- the parties clearly intended should be arbitrated and

5    there is a strong presumption in favor of arbitration under the

6    Federal Arbitration Act, that's the tension here.

7         THE COURT:  All right.

8         If you cannot be forced to arbitrate collective

9    actions and claims and class actions, right, you cannot be

10   forced, you just argued to the Court, that this language means,

11   you cannot be forced to arbitrate collective actions and class

12   actions, right?

13        MR. PERLOWSKI:  The Supreme -- yes and that's

14   consistent, that is --

15        THE COURT:  That we agreed on that.

16        MR. PERLOWSKI:  -- that is consistent, that -- it is

17   consistent -- 'cause, again, the Supreme Court precedent --

18        THE COURT:  Okay.

19        MR. PERLOWSKI:  -- is very clear.

20        THE COURT:  You and I agree on that --

21        MR. PERLOWSKI:  We do.

22        THE COURT:  -- that -- you said, that this language

23   cannot be forced to arbitrate.

24        Doesn't that mean -- that means -- that you can bring

25   collective actions and class actions in -- in a court of law?

1           MR. PERLOWSKI:  What that means as --

2           THE COURT:  If you cannot be forced to arbitrate, that

3     means, you could be in front of me.

4           MR. PERLOWSKI:  -- what that means, your Honor, is

5     anybody who has individual claims that is subject to -- or that

6     is subject to arbitration -- cannot be appropriately class

7     representatives.  There may be other class representatives, that

8     are appropriate representatives, but Ms. Novosad and Ms. Morris

9     cannot be, because they chose to arbitrate their individual

10    claims.

11          So -- and again, the Supreme Court has been very clear

12    that that is consistent with the Federal Arbitration Act.  And

13    can --

14          THE COURT:  So --

15          MR. PERLOWSKI:  -- and is permissible.

16          THE COURT:  -- on that point, your argument is that

17    they cannot be class representatives, if they agreed to

18    arbitrate individual claims --

19          MR. PERLOWSKI:  Yes.

20          THE COURT:  -- or members of the class or collective

21    action, right, neither one of them?

22          MR. PERLOWSKI:  Well, with their being members of the

23    class, it's in effect, duplicative of what's happening in

24    arbitration.  Because, again, the arbitration will go forward,

25    an award will be entered and then, an award will be confirmed.

1   So, in effect, that would be a double dip on their behalf.

2          THE COURT:  Okay.

3          So, this language is meaningless, right?

4          MR. PERLOWSKI:  No, it's not meaningless, your Honor,

5   because --

6          THE COURT:  You cannot be forced to arbitrate, but you

7   can be forced to arbitrate --

8          MR. PERLOWSKI:  No, what -- well, your Honor --

9          THE COURT:  -- because that's what you're arguing,

10   they have --

11          MR. PERLOWSKI:  -- the Supreme -- again, the Supreme

12   Court expressly said -- and this is in situations where

13   arbitration clauses were silent and -- and what happened,

14   defendants were trying to compel class-wide arbitration, when

15   the clause was silent.

16          And  the Supreme Court said, you can't do that, you

17   need --

18          THE COURT:  Right.

19          MR. PERLOWSKI:  -- you need to, in effect -- the goal

20   of a arb -- is to -- it states your piece.

21          So, this language is intended to do that, it's

22   intended to provide the notice and even in the <u>Herzfeld</u>

23   decision, which Ms. Novosad relies, the very beginning of the

24   decision says -- where the <u>Herzfeld</u> decision rendered -- what

25   happened in <u>Herzfeld</u> is, the defendant, the Gold Club was trying

22

1   to compel a class arbitration without that language.

2            So, what the Court said, you can't do that.

3            But then, the Court said and most tellingly, it does

4   so without an express waiver, so there was no express waiver in

5   Herzfeld, 'cause it was silent.

6            And then it says:  Or even a mention of a

7        representative actions from which a court may imply

8        notice and waiver.

9            So, the whole idea is, this language is intended to

10  give notice to the people who are signing it, that you cannot --

11  that you cannot -- or that class and collective actions claims

12  -- are not subject to arbitration.

13           It's intended, perhaps, not in the most pristine

14  English, but it is intended to give the signatories notice, that

15  they are waiving the rights with respect to arbitration of class

16  or collective actions.

17           THE COURT:  It doesn't say that.  It says:

18           This program covers only -- covers only -- applies

19        only to claims by individuals and does not cover --

20        does not apply to class or collective actions.

21           MR. PERLOWSKI:  That -- okay.

22           THE COURT:  So, isn't that what it means --

23           MR. PERLOWSKI:  Well, let's step -- let's --

24           THE COURT:  -- it does not apply to -- it does not

25  cover, it does not cover --

23

1          MR. PERLOWSKI:  The program --

2          THE COURT:  -- it does apply.

3          MR. PERLOWSKI:  -- the program which is the

4    arbitration.

5          THE COURT:  Right.  The arbitration program.

6          MR. PERLOWSKI:  So, we're saying, arb -- class or

7    collective actions are not covered by the program, which means,

8    there's no arbitration of class or collective actions, but there

9    is arbitration of claims by individuals.

10         And again, I would offer, we need to look at the

11   complaint, because the complaint is very clear, that Ms. Novosad

12   and Ms. Morris are bringing claims on their own behalf for the

13   very same relief that they -- that would have been afforded to

14   them, if they didn't style it as a collective action.

15         THE COURT:  On the Supreme Court precedent, you can --

16   under the law -- you cannot arbitrate collective and class

17   actions, right?

18         MR. PERLOWSKI:  No.  You can, if -- you can --

19         THE COURT:  And individual --

20         MR. PERLOWSKI:  -- if -- if it's clear -- if you -- if

21   the clause, literally said, the program covers claims by

22   individuals and all class or collective-action claims -- you are

23   including without limitation all class or collective-action

24   claims, something that was clear, that you could arbitrate both

25   individual and class and collective-action claims, you could, in

24

1   fact, arbitrate class or collective-action claims.

2          Now, you clearly could, because -- and that's -- that

3   goes back to Stott-Neilson.  What Stott-Neilson said, if you're

4   silent -- silence doesn't mean, you can arbitrate class or

5   collective-action claims.  You have to say -- you have to make a

6   statement with respect to whether class or collective-action

7   claims are subject to arbitration.

8          And then, the Supreme Court in Italian Colors said:

9          If you say that they're not, the individual claims

10      still get arbitrated, regardless of whether that's

11      perceived as unfair or not, they still go to arbitration.

12         What I'm trying to say is that this clause is

13  consistent with those rulings, because the employees who signed,

14  are given notice that class and collective-action claims are not

15  part of arbitration, but your individual claims are.

16         So, if you read this clause together with Stott-

17  Neilson and Italian Colors, which are Supreme Court precedent,

18  the individual claims that Ms. Novosad and Ms. Morris are

19  bringing, have to be arbitrated.

20         THE COURT:  All right.  Anything else?

21         MR. PERLOWSKI:  No, your Honor.

22         THE COURT:  Okay.

23         MR. PERLOWSKI:  Thank you.

24         THE COURT:  Okay.  Thank you.

25         (Pause at 10:53 a.m.)

1          THE COURT:  All right.

2          I -- I have a couple of preliminary questions, I am

3   going to pose them to you, but if counsel has any information,

4   I'd appreciate it.

5          Is there an employment agreement here between the

6   plaintiff and the defendant?

7          MR. SEILER:  There is no employment agreement, there's

8   just the --

9          THE COURT:  There's no writing in any way or shape --

10  memorializing an agreement?

11         MR. SEILER:  It's an at -- it's at-will employment,

12  but --

13         THE COURT:  At-will employment, oh, that's what I was

14  getting at.

15         MR. SEILER:  Yes.

16         THE COURT:  So, there is no written agreement

17  anywhere?

18         MR. SEILER:  No, there is not.

19         THE COURT:  It's an at-will employment agreement?

20         MR. SEILER:  Or not that I'm aware of, your Honor.

21         THE COURT:  And both plaintiffs signed the -- did both

22  plaintiffs sign the arbitration clause --

23         MR. SEILER:  I believe so.

24         THE COURT:  -- as he indicated?

25         MR. SEILER:  Yes, last night, I was provided a copy of

1   Ms. Morris' as well.

2          THE COURT:  And what is the size of the punitive opt-

3   out in class?

4          MR. SEILER:  At this time, it's unknown.  But my

5   understanding of that, it would be at least, fifty people.

6          THE COURT:  And what is the basis of that

7   understanding?

8          MR. SEILER:  From speaking with both of the plaintiff

9   witnesses.

10          THE COURT:  Okay.

11          But of those fifty people -- of those fifty people --

12   you don't know who has or has not signed those -- those

13   agreements to the EDR program?

14          MR. SEILER:  I am not aware.  But I would assume that

15   all --

16          THE COURT:  All of them.

17          MR. SEILER:  -- of them would have.

18          THE COURT:  Right.

19          MR. SEILER:  It specifically states in the agreement

20   that it is required for you to sign that agreement for you to

21   continue your employment with that company.

22          THE COURT:  So, okay.

23          And -- and as an aside, the offer of continued

24   employment, it's not a consideration, right?

25          MR. SEILER:  Ah --

1          THE COURT:  I think, Third Circuit law it's pretty --

2          MR. SEILER:  Yes, your Honor.

3          THE COURT:  -- clear, although I -- I think there's a

4    problem, because I don't think these people have a choice, but

5    -- but it's not a consideration.

6          So -- so, basically, what he's arguing is, you could

7    never have a collection action or an arbitration -- a collective

8    action or a class action, because they all signed this

9    agreement.

10         MR. SEILER:  Yes, that's my understanding of what the

11   defendants are arguing.

12         THE COURT:  Okay.

13         You -- you heard my question, what does that -- that

14   last sentence mean?

15         MR. SEILER:  I -- I'd interpret that to mean just what

16   it says, it says, specifically, that:

17             No remedies otherwise available would be forfeited

18          and this program covers only -- it covers only claims by

19          individuals and does not cover class or collective

20          actions.

21             I don't think that that can be --

22         THE COURT:  So, why do you think -- why do you think

23   that this does not show, they decided to submit those claims to

24   arbitration?

25         MR. SEILER:  I -- it specifically, says that the

1    entire clause -- the entire agreement -- does not cover class --

2    class or collective actions at all.  So, I mean, I think it

3    specifically states that it doesn't cover them.

4                 THE COURT:  Okay.

5                 MR. SEILER:  That's an explicit statement, that those

6    are not -- that those types of claims will not be arbitrated.

7                 THE COURT:  Okay.  Go ahead, you may continue.

8                 MR. SEILER:  Thank you.

9                 Aside from those claims being expressly exempt from --

10                THE COURT:  Do you agree that the arbitration clause

11   is enforceable as to the individual claims, the wages and the

12   termination -- that the termination was wrongful?

13                MR. SEILER:  As to the wrongful-termination claims, we

14   have agreed that those are subject to arbitration.

15                With regard to the FLSA claims, first of all, it's --

16   it's a collective action, it was brought as a collective and

17   class action with regard to the state claims.

18                I don't think that you can sever them from -- well,

19   you can't sever them from the class, because you can't proceed

20   on a class action without a representative.  And I don't believe

21   you can sever them from the collective action, either, because

22   there would never, in effect, be a collective action.

23                THE COURT:  So, but he said -- but he's saying,

24   because they all signed the collective -- the -- the -- what is

25   it, the arbitration program, that they cannot be representatives

1  in a collection or in a class action?

2          MR. SEILER:  That's -- well --

3          THE COURT:  I don't know whether you could as far as

4  saying, they cannot even be members.  But it seems to me, that's

5  what he is suggesting.

6          MR. SEILER:  That seems to be what they're suggesting

7  and I -- I would disagree with that, I think that --

8          THE COURT:  Why?

9          MR. SEILER:  Because it would, in effect, completely

10  demolish any collective or class actions.

11          And -- and that was something that was stated in Herz

12  -- Herzfeld, which was a recent 2015 opinion by Judge Kearney,

13  wherein he found -- where there was no mention of class or

14  collective arbitration, whatsoever.

15          And I think the -- the cases that defendants were

16  citing in their argument was that, when an agreement in total is

17  silent as to class or collective arbitration, that you can't

18  then force somebody to arbitrate class or collective --

19          THE COURT:  It's not enforceable, the agreement is not

20  enforceable as to the class claims or the collective action.

21          MR. SEILER:  Right.

22          So then, they would have to just go -- push forward --

23  with their individual claims --

24          THE COURT:  But it --

25          MR. SEILER:  -- but --

1    THE COURT:  -- but this language is different.

2    MR. SEILER:  Exactly.

3    And I would say that this is different from those

4    cases, because this specifically says, that it doesn't cover

5    class or collective actions and, therefore, it would

6    automatically be staying in this court with your Honor.

7    A secondary argument on top of that would be that,

8    even if it was somehow silent to it, either way, Judge Kearney

9    found that to deprive an individual of their right to a

10    collective or class action would be substantively

11    unconscionable.

12    THE COURT:  Right.

13    So, either way, you win?

14    MR. SEILER:  I would say so, your Honor.

15    THE COURT:  If the language was not there, you win and

16    if the language is there, you win, because it's a carve out?

17    MR. SEILER:  Yes, your Honor.

18    THE COURT:  But it's not inconsistent to have the

19    wrongful termination, right --

20    MR. SEILER:  I don't believe --

21    THE COURT:  -- be subject to individual -- subject to

22    the arbitration?

23    MR. SEILER:  I don't believe so, the wrongful

24    termination, obviously, only goes to -- it's -- it's a

25    retaliation claim.  And all that is relevant with regard to

1   those claims is, whether or not, she was terminated because she

2   complained about overtime or other wage violations.

3        The actual underlying violations for those -- for

4   those complaints, it's completely irrelevant as long as you have

5   a good-faith basis for your belief in -- in complaining, you can

6   still have a retaliation claim.

7        Obviously, in this case, it solely comes down to

8   whether or not, she was -- her, Ms. Morris and other similarly-

9   situated employees -- were properly paid their wages.

10       So, while they start from the same employment with

11  similar management, they go on two different tracks as far as

12  what evidence needs to be -- what needs to be shown and what

13  specifically needs to be proved at the end of the day at trial.

14       THE COURT:  Okay.

15       What is your position -- so, do you agree that, at

16  least, that retaliation claim or the wrongful termination claim

17  is arbitrable?

18       MR. SEILER:  Yes, your Honor.

19       We've -- we recently submitted a response to

20  defendant's motion for arbitration -- with Judge DuBois, who is

21  -- who is holding that case and --

22       THE COURT:  He -- he sent it to arbitration.

23       MR. SEILER:  Yes, your Honor.

24       THE COURT:  So -- so, what is your position on any

25  stay in this proceeding?

1          MR. SEILER:  I would say that a stay would be entirely

2    inappropriate.

3          First of all, because they -- they are not running on

4    the same track and one -- a ruling in the arbitration matter --

5    would not have any effect on whether or not, she was -- what --

6    properly or not properly paid overtime.

7          THE COURT:  But isn't that --

8          MR. SEILER:  The --

9          THE COURT:  -- is that an arbitrable claim --

10          MR. SEILER:  It --

11          THE COURT:  -- whether she was properly paid overtime

12    or not?

13          MR. SEILER:  -- it could potentially be an arbitrable

14    claim, but I don't believe it is in this matter.

15          THE COURT:  Why not?

16          MR. SEILER:  Because -- well, because we brought it as

17    a class and collective action.  If we had brought that solely as

18    an individual action, then it -- it probably would have been

19    subject to arbitration --

20          THE COURT:  Okay.

21          MR. SEILER:  -- but that's not the case.

22          THE COURT:  So, you split the causes of action here,

23    right?

24          MR. SEILER:  Yes, we did.

25          THE COURT:  Okay.

1    Isn't that, like, frowned upon in -- in our -- under

2    the *jurisprudence*?

3    MR. SEILER:  I don't -- I don't -- I'm not aware of

4    that being the case, if it is.  The reason that we did that is,

5    obviously, because the class and collective actions and her

6    personal retaliation claims, it -- I mean, they're separate and

7    distinct from each other.

8    And her personal retaliation claims wouldn't relate at

9    all to any of the -- the claims of the punitive class members or

10   Ms. Morris' claims for that matter.

11   THE COURT:  So, if I accept your arg -- your position

12   that the fact that she signed or -- she signed -- or your -- the

13   arbitration agreement, it's meaningless, right, as to the

14   individual claims?

15   MR. SEILER:  As to the individual claims, we have

16   already agreed that her -- her -- that they are arbitrable,

17   because she signed the agreement.

18   THE COURT:  Okay.

19   But as to the improperly paid overtime, which is --

20   which is -- they claim, that comes within the subject of the

21   arbitration, she signed an arbitration agreement.

22   You're saying, the arbitration agreement is

23   meaningless, that she could still bring a collective -- bring it

24   in -- pursue her claim on the basis of improperly being paid

25   wages as a collective action or a class action?

1          MR. SEILER:  I don't think it's necessarily

2    meaningless.  I think that it -- it specifically exempts those

3    types of actions.  So, I believe, that she should be able to

4    bring them in federal court.

5          THE COURT:  Okay.  Very well.

6          You cite -- remind me, which one is Judge Kearney's

7    case?

8          MR. SEILER:  That is <u>Herzfeld</u>.

9          THE COURT:  Okay.

10         And that had -- it was silent on the issue of whether

11   the employee could bring a collective or -- a collective or a

12   class action?

13         MR. SEILER:  Yes.

14         The agreement in that case did not mention -- that is

15   as far as my understanding -- arbitrate or class arbitration or

16   collective arbitration, it was silent with --

17         THE COURT:  Can you --

18         MR. SEILER:  -- regard to that.

19         THE COURT:  -- can you arbitrate -- in a labor context

20   -- can you arbitrate -- I think, he says, you can subject to

21   proper notice, a collective action and a class action to

22   arbitration?

23         MR. SEILER:  Yes.

24         Basically, the way that the majority of the courts

25   have looked at it, is that if you specifically state in a -- an

1   arbitration agreement, that you -- that the plaintiffs would

2   have the ability to bring a class arbitration or a collective

3   arbitration, then you can pursue those in an arbitration matter.

4          However, if there's -- if it just says, that your --

5   all of your matters are subject to arbitration, then you can't

6   -- you can't then subject them to class arbitration, because

7   regular courts are so much different than arbitration and that

8   it jumbles the -- the policy implications of arbitration too

9   much.

10          And that's what was Kearney -- Judge Kearney -- went

11   over in Herzfeld was that by -- by doing so, when there's --

12   there's -- excuse me -- to take somebody's arbitration or -- or

13   I'm sorry -- to take their collective rights away without any

14   waiver of doing so, explicitly, in the agreement, then that

15   would be substantively unconscionable.

16          THE COURT:  He's saying, this is a waiver, putting

17   them on notice that they're waiving -- that -- well, this is --

18   this is -- no, I think, what he's saying is putting them on

19   notice that they -- well, I think that's what he's -- he's

20   arguing, isn't he?

21          MR. SEILER:  What I'm understanding is that the

22   defendants are trying to argue that this, actually, is some type

23   of explicit waiver of a collective action --

24          THE COURT:  Express waiver, yes.

25          MR. SEILER:  -- and a collection action.

1         And I -- I think that that is the complete opposite of

2   how it can in any way be interpreted.  I don't see how in any

3   way, this could -- this could waive somebody's collective class

4   action, explicitly.

5         THE COURT:  In any event, your position in this case

6   is different than Judge Kearney's case?

7         MR. SEILER:  It goes another step, I don't even think

8   we need to reach Judge Kearney's case, because I think it

9   explicitly does -- I don't -- I think it explicitly -- it

10  explicitly states that this agreement does not even cover class

11  or collective actions, which means that it's not applicable to

12  this case.

13        THE COURT:  All right.  Thank you.

14        MR. SEILER:  Thank you, your Honor.

15        THE COURT:  Anything else?

16        MR. PERLOWSKI:  May I, your Honor?

17        THE COURT:  Yes.

18        MR. PERLOWSKI:  The -- in argument in citing Herzfeld,

19  Ms. Novosad and Ms. Morris' counsel really relied on an

20  unconscionability argument, but that's not before the Court.

21  They've already consented that this arbitration clause is

22  permissible.  They've even consented to arbitration under it.

23        There is no unconscionability challenge before the

24  Court. So, I wanted to make that point.

25        Secondly, with respect to how -- going back to how

1  Judge Kearney may have considered things based on what he was

2  saying in Herzfeld, if this -- again, Judge Kearney's -- because

3  there was no language about class claims and the Gold Club that

4  the defendant was trying to force the Wage and Hour collective

5  action claims in arbitration.

6        Judge Kearney said, look, you can't do that and that's

7  unconscionable, because -- but you just -- you need to mention

8  that representative actions are -- that they're -- from which a

9  court can imply notice and waiver consistent with the broad

10  interpretation under the Federal Arbitration Act.  We have that

11  here.

12        And then, I guess, just getting back to --

13        THE COURT:  I don't know how you could read that to me

14  in a waiver.

15        MR. PERLOWSKI:  Well -- I think it puts --

16        THE COURT:  I'm struggling with the language on this.

17        MR. PERLOWSKI:  -- I think it puts --

18        THE COURT:  Huh?

19        MR. PERLOWSKI:  -- it puts the individuals, who sign

20  in on notice that they will not be compelled to arbitrate class

21  or collective actions, which is the entire purpose of Stott-

22  Neilson, Italian Colors, Judge Kearney's decision in Herzfeld,

23  that's the purpose, was it done -- again -- in the most crystal-

24  clear manner?  No.  But that is the overarching purpose.

25        THE COURT:  If I interpret this to mean that the

1  program does not apply to claims by individuals and it does not

2  cover class or class actions, isn't that a carve out?

3          MR. PERLOWSKI:  I'm sorry, I -- I didn't under --

4          THE COURT:  If I interpret -- or if I -- if I read

5  this to mean, the same -- a carve out and -- I read it to mean

6  the same?

7          MR. PERLOWSKI:  That's certainly a fair reading, your

8  Honor.

9          THE COURT:  How could you then say that --

10         MR. PERLOWSKI:  Well --

11         THE COURT:   -- that puts them on notice?

12         MR. PERLOWSKI:  But it does apply to the individual

13  claims.  I think that's what we're missing.

14         And -- and this is a product of, you -- you -- in your

15  discussion with Mr. Seiler, this is a product of how this was

16  pled.  We do have claims that were split, claims that were

17  split, intentionally to try to preserve a collective action,

18  let's be clear about what's happening here.

19         And the claims are clearly interrelated, because for

20  example, if in the wrongful termination claim, the Court decides

21  that Ms. Novosad's claim -- complaints -- were not made in good

22  faith.  Well, that guts her wage and hour claim.  So, they

23  clearly are related.

24         But I mean, we can't -- we're trying to create a

25  fiction that an individual, who has wage and hour claims, that

1  -- and the facts which are nearly identical in the complaint but

2  for about six or seven paragraphs until you get to the claims,

3  that there are two separate actions.

4      This is a -- this is a product of very creative

5  pleading and splitting claims.  And again, re -- the individual

6  claims, there is a clear intent to submit those claims to

7  arbitration.

8      And Ms. Novosad and Ms. Morris are bringing individual

9  claims until a conditional class is certified.  They have

10  individual claims, they're seeking individual relief.  I don't

11  think that we can forget that.  And that's the problem of just

12  how this was brought.

13      You know, we're not dealing -- we are dealing with the

14  one lawsuit arising out of the same facts and occurrences, which

15  is what the court would recommend should be done.  But you don't

16  split causes of action.  We have split causes of action here,

17  with some of them already in arbitration.

18      And I don't see how Mr. Seiler can say, that her --

19  that Ms. Novosad's individual termination claims, are within the

20  arbitration clause, but her individual wage and hour claims are

21  not, simply, because she purports to be a class representative.

22  I just don't -- that -- that to me, you can't reconcile given

23  the language.

24      THE COURT:  Very well.  I think I understand.

25      MR. PERLOWSKI:  Thank you.

1        THE COURT:  So, if I was to deny the motion to compel,

2   let's talk about scheduling.  What needs to be done to move the

3   case along?  I'm not saying that I am going to deny it.

4        MR. SEILER:  Sure.

5        THE COURT:  I am just saying, if I was to, give me a

6   sense.

7        MR. SEILER:  Well, the next step from -- from our

8   side, your Honor, would likely be to file for a conditional

9   certification with regard to the FLSA claims.

10        THE COURT:  Okay.

11        And how -- in terms of -- did you submit a schedule

12   for that -- a proposed case-management order?

13        MR. SEILER:  We did submit a joint conference report,

14   your Honor.

15        THE COURT:  Okay.

16        In terms of time, how much time you will need?

17        MR. SEILER:  I would, likely request two to three

18   weeks to do that.

19        And the parties jointly requested six months following

20   the Court's decision on conditional certification for discovery.

21        THE COURT:  Why so long, it's not a big case?

22        MR. SEILER:  From -- from my side, I'm not, honestly,

23   sure how many affected individuals there could potentially be.

24   I don't actually have a number of how many employees.

25        THE COURT:  So, you said fifty before, where did that

1   number come from?

2          MR. SEILER:  That number comes from my clients letting

3   me know that there's -- that they believe there to be, at least,

4   fifty other nurses at the facility.

5          THE COURT:  What -- what is the amount of the claims

6   in any event, do we know?

7          MR. SEILER:  The --

8          THE COURT:  Do we have a sense?

9          MR. SEILER:  Well, the amount of the claims from the

10  -- the two plaintiffs that are currently at issue right now, I

11  believe, they have approximately $18,000.00 in just lost wages.

12         THE COURT:  Combined?

13         MR. SEILER:  No, that is each after liquidated

14  damages.

15         THE COURT:  All right.

16         So, without liquidated damages?

17         MR. SEILER:  Then, there would be a --

18         THE COURT:  You're factoring in liquidated damages,

19  without liquidated damages, what are we talking about?

20         MR. SEILER:  Approximately, nine -- somewhere in the

21  $9,000.00 range.

22         THE COURT:  Each?

23         MR. SEILER:  Yes, your Honor, that's just with the

24  lost wages.

25         THE COURT:  All right.  Okay.

1          Any -- anything else with regards to if -- if I deny

2    the claims -- if I deny the motion to compel -- anything that I

3    -- I -- in terms of putting in a case-management order in place,

4    anything you need or anything I need to be aware of or know

5    about -- about this case, that factors in -- into the case-

6    management order?

7          MR. PERLOWSKI:  Not on our side, your Honor.

8          THE COURT:  Any interest in seeing my Magistrate Judge

9    for a settlement discussion?

10          MR. PERLOWSKI:  Well, your Honor, we -- we just

11    received a settlement proposal from Mr. Seiler, sometime

12    yesterday afternoon, I believe.

13          So, we haven't had an opportunity to confer with our

14    client about that yet.  But we will -- we will do so and get

15    back to the Court on that issue.

16          THE COURT:  All right.

17          What was the proposal?

18          MR. SEILER:  It was $35,000.00 for each -- for both

19    plaintiffs.

20          MR. PERLOWSKI:  And only with respect to the causes of

21    action that are in this lawsuit.  So, it -- that offer -- as I

22    understood it and I read it on my phone --

23          MR. SEILER:  You're correct.

24          MR. PERLOWSKI:  -- so, please correct me if I'm wrong.

25          It did not include the wrongful termination claims of

43

1   Ms. Novosad that are being arbitrated.

2          THE COURT:  All right.  All right.

3          Could you actually tell me, how you come up with

4   thirty-five each, that's $70,000.00 for an $18,000.00 -- even

5   with liquidated damages --

6          MR. SEILER:  Right.  And I think --

7          THE COURT:  -- for thirty-six thousand even with

8   liquidated damages.

9          MR. SEILER:  -- going after liquidated, we're also

10  entitled to attorneys fees and costs, which after the

11  preliminary stages of litigation, we can easily get to that --

12  get to that number.

13         THE COURT:  That's if you win or you get the -- I

14  mean, you --

15         MR. SEILER:  Well, I mean, $35,000.00, that -- that

16  would be approximately, I believe, $15,000.00 or so in attorneys

17  fees and costs.

18         I mean, in the event that we actually went to trial

19  and won, they -- our fee petition would be much more extensive

20  than that.

21         THE COURT:  Very well.  Anything else?

22         MR. SEILER:  Not from my side, your Honor.

23         THE COURT:  Okay.  Thank you.

24         Thank you for your arguments.

25         ESR OPERATOR:  All rise.

44

1          MR. PERLOWSKI:  Thank you, your Honor.

2          MR. SEILER:  Thank you, your Honor.

3          (Adjourned in this matter at 11:14 a.m.)

4                          *  *  *

C E R T I F I C A T E

_____I do hereby certify that the foregoing is a correct

transcript of the electronic-sound recording of the

proceeding in the above-entitled matter.


_____          Date: <u>April 21, 2016</u>
Gail Drummond
28 8th Avenue
Haddon Heights, New Jersey  08035
(856) 546-6270

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(d), the undersigned certifies that on this nineteenth day of July, 2016, the foregoing Joint Appendix: Volume II of II (pp. 6a–148a) was electronically filed with the Clerk of Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system. The undersigned also certifies that he caused four (4) paper copies of the foregoing document to be transmitted to the Clerk's Office by Federal Express for delivery within no more than five (5) business days. Service was accomplished on the following counsel by the CM/ECF system:

> Ari R. Karpf, Esq.
> Timothy S. Seiler, Esq.
> KARPF, KARPF, & CERUTTI, P.C.
> 3331 Street Road
> Two Greenwood Center, Suite 128
> Bensalem, PA 19020
> (215) 639-0801
> akarpf@karpf-law.com
> tseiler@karpf-law.com
>
> *Counsel for Plaintiffs-Appellees*
> *Irene Novosad and Kathy Morris*

One (1) paper copy of the foregoing document was also sent via U.S. Mail to the above-listed counsel.

> _____s/ James F. Segroves_____
> James F. Segroves